Aldwin H. SEEFELDT, Frederic A. Seefeldt, and Mariel M. Heinke, Plaintiffs-Appellants,

v.

State of Wisconsin, DEPARTMENT OF TRANSPORTATION, Division of Highways, Defendant-Respondent.

Court of Appeals

*No. 81–2438. Argued October 29, 1982.—Decided May 18, 1983.*
(Also reported in 336 N.W.2d 182.)

For the plaintiffs-appellants there was a brief submitted by *Daniel L. Sargeant* of *Schloemer, Schlaefer, Alderson, Seefeldt & Spella, S.C.* of West Bend. Oral argument by *Benjamin Southwick* of Richland Center.

For the defendant-respondent there was a brief submitted by *Bronson C. La Follette,* attorney general, and *Charles A. Bleck,* assistant attorney general. Oral argument by *Charles A. Bleck.*

Before Scott, C.J., Voss, P.J., and Brown, J.

VOSS, P.J.  This action arises out of an award of damages made by the State of Wisconsin, Department of Transportation, Division of Highways, to appellants Aldwin H. Seefeldt, Frederic A. Seefeldt and Mariel M. Heinke for a partial taking of .55 acres from 184 acres of real property located in the town of Addison, Washington county, Wisconsin.  Initially, appellants had access to U.S. Highway 41.  When U.S. Highway 41 was declared a controlled-access highway, the appellants' access was reduced to reasonable access.  Now, the appellants allege that even this reasonable access is being taken away as the result of the taking of appellants' real estate in con-

junction with the upgrading of U.S. Highway 41 to freeway status.

In general terms, the issue is whether the appellants have suffered a loss. However, the real issue is whether the state can use a two-stage approach to deprive landowners of their reasonable access to a highway without compensating them for this loss. We find that the appellants have suffered a loss because of this two-stage taking and, thus, should be compensated. Accordingly, we reverse and remand this case for further proceedings consistent with this opinion.

As the map indicates,[1] the appellants' property straddles U.S. Highway 41. The property is divided into four parcels. Parcel one abuts the easterly line of U.S. Highway 41, the east line of Wild Life Road and the north line of Cedar View Road. Parcel two abuts the north line of Cedar View Road. Parcel three abuts Cedar View Road on its south right-of-way line and abuts the easterly line of U.S. Highway 41. Parcel four abuts the westerly line of U.S. Highway 41 and the easterly line of Wild Life Road.

The taking that brought about this action consisted of two narrow strips of land along the east side of U.S. Highway 41. Before the taking, a town road named Cedar View Road intersected U.S. Highway 41 at grade on its east side, and Wild Life Road intersected with U.S. Highway 41 at grade on both the east and west sides of U.S. Highway 41.

The development of U.S. Highway 41 began on September 26, 1952, when the state, after complying with the requirements of sec. 84.25, Stats., declared U.S. Highway 41 a controlled-access highway. On June 8, 1972, after following the procedures set out in sec. 84.295, Stats., the state declared U.S. Highway 41 a freeway. The current highway project, which has resulted in the taking of the appellants' real estate, consists of the upgrading of U.S.

Highway 41; U.S. Highway 41 is presently classified as a controlled-access highway, and subsequent to the up-grading in status, it will be classified as a freeway.

The plans of this highway project indicate that Wild Life Road and Cedar View Road will not intersect with

[1] Below is a map of appellants' property and adjacent routes of access.

U.S. Highway 41 near the appellants' property once the project is completed. The plans also show that the project contains no provision for construction of a frontage road in the vicinity of the appellants' property. Because of this, the appellants will be forced to take a more circuitous route in gaining access to and from U.S. Highway 41 after the highway improvement project is finished.

Before the taking, approximately 45 acres of the appellants' property were situated to the west of U.S. Highway 41, while 139 acres were located on the east side of the highway. Prior to the taking, the appellants' property did not have direct private access to U.S. Highway 41; instead, they had convenient public access via Wild Life and Cedar View Roads. After the highway improvement project is completed, the appellants will lose that convenient public access. It is anticipated that the new route the appellants will be forced to take in order to get from their property located east of U.S. Highway 41 to their property on the west side of U.S. Highway 41 will cover a distance of at least six miles. The appellants will have to travel 2.8 miles to get from their property lying east of U.S. Highway 41 to the northbound lane of U.S. Highway 41. From the eastern portion of the appellants' property to southbound U.S. Highway 41, the appellants will be forced to travel a distance of 3.1 miles. From their western portion of real estate, the appellants will have to travel 4.8 miles to reach northbound U.S. Highway 41 and 2.9 miles to reach southbound U.S. Highway 41.

Besides the circuity of travel problem, the appellants also point out that while part of their property is zoned agricultural, some land is zoned for commercial purposes. The appellants maintain they were planning to develop a portion of their land for commercial purposes and also to develop some other parts for residential purposes.

In an attempt to substantiate their alleged loss in property value, the appellants hired L.J. Sauer, a profes-

sional real estate appraiser, to appraise their property. Sauer testified at trial concerning his findings. Sauer is of the opinion that the appellants' property value will be diminished in value because of the more circuitous route to U.S. Highway 41 caused by the highway project. Sauer calculated that because of the effects of the highway project, the appellants will suffer a property value diminution of $24,650. Sauer also stated that the appellants' property will not have reasonable access to U.S. Highway 41 once the highway project is completed.

The appellants argue that sec. 84.295(5), Stats., requires the state to compensate them for the loss of convenient access to U.S. Highway 41 from their property, which they will suffer when the highway project is completed. We agree.

Section 84.295(5), Stats., reads in pertinent part:

Where a state trunk highway is on or along any highway which is open and used for travel and is designated as a freeway or expressway, reasonable provision for public highway traffic service or access to abutting property shall be provided by means of frontage roads as a part of the freeway or expressway development, or the right of access to or crossing of the public highway shall be acquired on behalf of the state as a part of the freeway or expressway improvement project.

Based on this statute, the state must either provide the abutting property owners with reasonable public highway traffic service or access, or the state must acquire these rights as part of the freeway project.

The state contends, however, that it can declare a freeway in this case without building a frontage road or paying compensation to the appellants for loss of access because U.S. Highway 41 was a controlled-access highway, not a state trunk highway as sec. 84.295(5), Stats., deals

with, at the time it was declared a highway.[2] The state argues that at the time of the acquisition, the appellants' only access was to the local town roads, and thus they did not have a property right of access to U.S. Highway 41.[3] The state therefore maintains that since the appellants did not have a property right of access to U.S. Highway 41, there is no basis for damages and thus no right to compensation.

Pivotal to the state's argument is that it does not consider U.S. Highway 41 to be a state trunk highway. The state's basis for this conclusion is that through upgrading over the years, U.S. Highway 41 is no longer a state trunk highway. We disagree with this analysis because, in our opinion, U.S. Highway 41 is still part of the state trunk highway system.

As authority for our position, we cite to portions of secs. 84.25, 84.295(1) and (9), 84.29(2), and 340.01, Stats. In our opinion, these sections indicate the legislature's desire to develop a state trunk highway system and that within this system there is a logical scheme of different highway classifications based primarily on the number of users. One such designation is a controlled-access highway. Because we find a controlled-access highway to still be part of the state trunk highway system, sec. 84.295(5) would still be applicable.

---

[2] At trial, under an offer of proof, Mr. Gene Renguette, an engineer employed by the Wisconsin Department of Transportation, Division of Highways, testified that the appellants would not have been granted a private access permit during the time U.S. Highway 41 was a controlled-access highway because they had access to Cedar View and Wild Life Roads.

[3] Section 84.25(6), Stats., states:

(6) ABUTTING OWNERS. After the designation of a controlled-access highway, the owners or occupants of abutting lands shall have no right or easement of access, by reason of the fact that their property abuts on the controlled-access highway or for other reason, except only the controlled right of access and of light, air or view.

Section 340.01 (60), Stats., defines state trunk highway as follows:

(60) "State trunk highway" means *any highway designated* pursuant to s. 84.02 or 84.29 *as part of the state trunk highway system,* exclusive of connecting highways. [Emphasis added.]

Section 84.25 (1), Stats., also speaks of the "state trunk system:"

The department is authorized to designate as controlled-access highways *the rural portions* of the state trunk system on which, after traffic engineering surveys, investigations and studies, it shall find, determine and declare that the average traffic potential is in excess of 2,000 vehicles per 24-hour day. Such designation *of a portion of any state trunk highway* in any county as a controlled-access highway . . . . [Emphasis added.]

In addition, four subsections of sec. 84.295, Stats., entitled "Freeways and expressways," deal with the relationship between the state trunk highway system and freeways and expressways. Section 84.295 (1), (2), (9) and (10) provide in pertinent part:

[T]he legislature of the state of Wisconsin declares that the intent of this section is to provide for the *development of a well balanced and integrated state trunk highway system* further modernized and improved to adequate standards to provide needed increased traffic capacity, . . . .

(2) INVESTIGATIONS, SURVEYS AND STUDIES. As a function *in the improvement of state trunk highways* and connecting highways the department is authorized to make investigations, surveys and studies of the present and anticipated needs for the improvement of desirable, *probable additions to the state trunk highway system,* and to otherwise carry out the expressed intent of this section.

. . . .

(9) ESTABLISHING FREEWAY STATUS. After the adoption of an order by the department laying out and designating *any portion of a state trunk highway*

as a freeway or expressway, the highway described in the order shall have the status of a freeway or expressway for all purposes of this section . . .

(10) ESTABLISHING LOCATIONS AND RIGHT OF WAY WIDTHS FOR FUTURE FREEWAYS OR EXPRESSWAYS. (a) Where, as the result of its investigations and studies, the department finds that there will be a need in the future for the *development and construction of segments of a state trunk highway as a freeway or expressway*, . . . . [Emphasis added.]

Based on the above-cited statute sections, we are convinced that the legislature in enacting these sections intended that a state trunk highway system be instituted and maintained. In providing for the development of a well-balanced and integrated state trunk highway system, the legislature further provided for the upgrading in status of certain portions or segments of the state trunk highway system in order to better serve the public. For example, a rural portion of the state trunk system can be upgraded to make it a freeway or an expressway. However, while a portion or segment of the state trunk system may be upgraded to freeway or expressway status, it still remains part of the state trunk highway system. Thus, because we hold that U.S. Highway 41 is still part of the state trunk highway system even though it has been upgraded in status, we conclude that it is a "state trunk highway" within the meaning of sec. 84.295 (5), which requires the state to compensate appellants for any loss of reasonable access.

Since sec. 84.295(5), Stats., is applicable, the question now becomes: Have the appellants lost their reasonable access? This is a jury question. Because the reasonableness of access has been placed at issue in this case, the appellants are entitled to present evidence to the jury on the question of how reasonable their access will be after

the highway project is completed. Accordingly, we reverse and remand this case.

*By the Court.*—Judgment reversed and cause remanded for proceedings consistent with this opinion.