Andrew F. NARLOCH and Ann Narloch, his wife,
Plaintiffs-Appellants,

v.

State of Wisconsin, DEPARTMENT OF TRANSPORTATION,
Division of Highways, Division II,
Defendant-Respondent-Petitioner.
[No. 82–052.]

Hugh L. PORTER, Howard Porter and George Porter,
d/b/a Porter Brothers, a partnership,
Plaintiffs-Condemnees-Respondents,

v.

State of Wisconsin, DEPARTMENT OF TRANSPORTATION,
Division of Highways, Division II,
Defendant-Condemnor-Appellant.
[No. 82–462.]

Gordon F. MARTY and Eunice G. Marty, his wife,
Plaintiffs-Condemnees-Respondents,

v.

State of Wisconsin, DEPARTMENT OF TRANSPORTATION,
Division of Highways, Division II,
Defendant-Condemnor-Appellant.
[No. 82–463.]

Supreme Court

*Nos. 82–052, 82–462, 82–463. Argued November 1, 1983.—
Decided November 30, 1983.*

(Also reported in 340 N.W.2d 542.)

For the State of Wisconsin there were briefs by *James W. Hammes, Clayton A. Cramer* and *Cramer, Multhauf & Curran,* Waukesha, and oral argument by *James W. Hammes* and *Clayton A. Cramer.*

For the plaintiffs-appellants and plaintiffs-condemnees-respondents there were briefs by *Thomas W. Koss, James D. MacDonald* and *MacDonald and Koss,* Union Grove, and oral argument by *Thomas W. Koss.*

WILLIAM A. BABLITCH, J. This is a consolidation of three cases. In case No. 82–052, the State of Wisconsin, Department of Transportation, Division of Highways (Department) seeks review of a decision of the court of appeals, which reversed a judgment and granted the Narlochs a new trial to determine damages arising from a condemnation. In case No. 82–462, the Department appeals from a judgment awarding the Porters damages and litigation expenses arising from a condemnation. In case No. 82–463, the Department appeals from a judgment awarding the Martys damages and litigation expenses arising from a condemnation.

The issues presented for review are:

(1) Does "existing right of access" in sec. 32.09(6) (b), Stats., mean only access points in use and for which the Department had granted permits at the time of a condemnation, pursuant to sec. 86.07(2),[1] and Wis. Admin. Code ch. Hy 31?

(2) Was the Department's restriction of access rights in the condemnation awards pursuant to an authorized exercise of its police power, making the loss of those rights noncompensable, or was it a taking of a property right, rendering the deprivation of those access rights a compensable item of loss or damage to property?

(3) Before loss of existing access rights may be considered as an item of severance damages,[2] must a con-

---

[1] Section 86.07(2), Stats., states in part: "No person shall make any excavation or fail or install any culvert or make any other alteration in any highway or in any manner disturb any highway or bridge without a permit therefor from the highway authority maintaining the highway. Such permit shall contain the statement and be subject to the condition that the work shall be constructed subject to such rules and regulations as may be prescribed by said authority and be performed and completed to its satisfaction. . . ."

[2] When a portion of property is taken under eminent domain, the "just compensation" awarded to the property owners includes not only the value of the portion taken, but also the diminution

demnee establish a foundation demonstrating a reasonable probability that prior to the condemnation, the department would have granted the condemnee permits for access points in the foreseeable future?

(4) Prior to awarding litigation expenses under sec. 32.28, Stats.,[3] must the trial court hold an evidentiary hearing to determine the reasonableness of the expenses?

(5) Does the condemnee's recovery of litigation expenses under sec. 32.28, Stats., include expenses incurred in an appeal?

We hold that:

(1) "Existing right of access" in sec. 32.09(6)(b), Stats., includes the right of an abutting property owner to ingress and egress from his property to a public road, and the right to be judged on the criteria for granting permits for access points under sec. 86.07(2), and Wis. Admin. Code ch. Hy 31;

(2) The Department's restriction of the condemnees' rights of access was a taking, rather than an authorized exercise of its police power, and is therefore compensable;

(3) Before loss of access rights may be considered as an item of severance damages, the condemnee must establish a foundation demonstrating that prior to the taking, there was a reasonable potential in the foreseeable future for developing his or her property in accord-

---

in value of the remaining property. *See* sec. 32.09(6), Stats. Severance damage means the diminution in value of the remaining property resulting from the taking. *See* Wis. J.I.—Civil, Part III, sec. 8105.

[3] Section 32.28, Stats., provides in part: "**Costs.** (1) In this section, 'litigation expenses' means the sum of the costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees necessary to prepare for or participate in actual or anticipated proceedings before the condemnation commissioners, board of assessment or any court under this chapter of chapter 275, laws of 1931, as amended (Kline Law)."

ance with its highest and best use, and that this potential is diminished because of the loss of access rights;

(4) Prior to awarding litigation expenses under sec. 32.28, Stats., the circuit court has the discretion to hold an evidentiary hearing on the reasonableness of the expenses, but is not required to do so;

(5) A condemnee who is awarded litigation expenses pursuant to sec. 32.28, Stats., and who prevails on appeal, is entitled to litigation expenses, including reasonable attorney fees, incurred in the appeal.

We affirm the decision in No. 82–052, and affirm the judgments in Nos. 82–462 and 82–463. We remand in Nos. 82–462 and 82–463, however, for determinations of the Porters' and Martys' litigation expenses incurred in their respective appeals.

*Background*

*Case No. 82–052*

On November 13, 1979, the Department acquired 2.11 acres of land owned by the Narlochs, pursuant to a condemnation under sec. 32.05, Stats. The land is in the town of Eagle, Waukesha county. The condemnation was necessitated by the relocation of state trunk highway 59. The award of damages filed by the Department contains the legal description of the land taken, and specifies that the Department was also taking the following rights:

"Also, all existing future or potential common law or statutory easements or rights of access between the right of way of the highway as described above (currently designated as S.T.H. 59) and all of the abutting remaining real property, whether acquired by separate conveyance or otherwise . . . ."

After the taking, the Narlochs' access to highway 59 was restricted to a single point.

The Narlochs appealed the condemnation award to the circuit court, pursuant to sec. 32.05 (11), Stats.,[4] seeking a determination of the fair market value of the property taken and severance damages to their remaining property. At trial, the Narlochs' expert appraiser testified that prior to the taking, the fair market value of their property affected by the condemnation was $79,800.00, and that after the taking, the value decreased to $70,-000.00. During the trial, the Narlochs also attempted to establish by an offer of proof that severance damages due to their loss of access rights to highway 59 were approximately $3,900.00. The court refused to allow this expert testimony. After a jury verdict, the Narlochs moved for a new trial on the basis that the court erroneously refused to allow testimony concerning severance damages due to loss of access rights. The court denied the motion, and granted the state's motion for judgment on the verdict.

The Narlochs appealed to the court of appeals, which reversed the judgment and remanded for a new trial. The Department petitioned for review to this court, which we granted.

*Case No. 82-462*

On December 4, 1979, the Department condemned a portion of land owned by the Porters pursuant to sec. 32.05, Stats. Prior to the condemnation, the Porters owned 171.69 acres of land in the town of Eagle. This land was comprised of several parcels, and the western boundary of the property abutted highway 59. A rail-

---

[4] Section 32.05 (11), Stats., provides in part: "WAIVER OF HEARING BEFORE COMMISSION; APPEAL TO CIRCUIT COURT AND JURY. The owner of any interest in the property condemned named in the basic award may elect to waive the appeal procedure specified in sub. (9) and instead, within 2 years after the date of taking, appeal to the circuit court of the county wherein the property is located. . . ."

road right-of-way bisects the property and runs parallel to highway 59.

The parcel of land subject to the condemnation consisted of 42.88 acres, and was between the right-of-way and highway 59. The Department acquired 2.88 acres of this parcel, which were in the right-of-way, plus an additional 4.4 acres of land. The award of damages described the land taken and included the same language as the Narlochs' award to the effect that the Department was also acquiring ". . . all existing, future or potential common law or statutory easements or rights of access. . . ."

Prior to the taking, the Porters had one driveway for access to highway 59 and used an access point to highway 59 that had no driveway. The Porters also had an access point to highway 59 at the midpoint of the frontage of their property. It is unclear whether the Department had granted permits for any of these access points. After the taking, the Department installed two driveways to service the parcel. The Department took all other access rights.

The Porters appealed the condemnation award to the circuit court, seeking a determination of the fair market value of the property taken and severance damages to their remaining property. An expert appraiser testifying on behalf of the Porters indicated that the highest and best use of the property was interim agricultural, with future development for residential purposes. The Porters' expert testified that prior to the taking, the property lying between the railroad right-of-way and highway 59 had a value of $2,600.00 per acre. The expert also testified that as a result of the taking, the value of the remaining property decreased by 10 percent. He attributed this reduction to the triangulation of the land, the change in grade, and loss of access rights.

The jury assessed damages in the amount of $18,-000.00. The Department moved for a new trial, arguing

that the court erred in permitting the Porters' expert to assess severance damages due to loss of access rights without first providing foundation testimony demonstrating a reasonable probability that prior to the taking, the Porters would have used their access rights in the foreseeable future. The court denied the motion, granted the Porters judgment on the verdict, and awarded the Porters litigation expenses, including attorney fees, pursuant to sec. 32.28, Stats. The Department appealed to the court of appeals, which certified the case to this court. We accepted the certification.

*Case No. 82-463*

As part of the relocation of highway 59, the Department condemned a portion of land and rights in the land owned by the Martys pursuant to sec. 32.05, Stats. The property is located in the town of Eagle. Prior to the taking, the parcel of land later affected by the condemnation consisted of 39.3 acres. After the taking, the parcel was reduced to 34.67 acres, and was bisected by relocated highway 59. The relocation of the highway split this portion of the property into 2 parcels. The condemnation award described the land taken, and included the same language as the paragraph in the awards made to the Narlochs and Porters that the Department was also taking ". . . all existing, future or potential common law or statutory easements or rights of access. . . ." Prior to the taking, the Martys had four access points to then highway 59. After the relocation and taking, old highway 59 became a town road. The Martys still have their four access points, but the access provided by these points is now to the town road. The Martys are limited to only one access point to relocated highway 59.

The Martys appealed the condemnation award to the circuit court. At trial, their expert testified that prior to the taking, the per acre value of the affected parcel

was $2,800.00. The expert testified that after the taking, the per acre value was $2,500.00. The reasons cited for the reduced value were the triangulation of the land caused by the taking, and the limitation to a single point of access to newly relocated highway 59. The Department's expert testified that the value was reduced by $150.00 due to triangulation of the land as a result of the taking, but that there was no damage to this property by way of limitation or restriction of access to the relocated highway.

The jury assessed damages at $17,500.00, which represented the difference between the fair market value of the property before the taking and the fair market value after the taking. The Department moved for a new trial for the same reason as in *Porter*. The court denied the motion, granted judgment on the verdict, and awarded litigation expenses to the Martys including attorney fees, pursuant to sec. 32.28, Stats. The Department appealed to the court of appeals, which certified the case. We accepted the certification.

### Taking of Existing Access Rights

The awards of damages that the Department offered to the condemnees in these cases were made pursuant to sec. 84.09, Stats., which governs the acquisition of lands and interests by the department. Section 84.09(2) provides that the department may acquire needed lands and interests by condemnation under ch. 32. Section 32.05(7) governs the award of damages made by the condemnor to a condemnee, and sec. 32.05(7)(a) indicates that the award ". . . shall describe such property by legal description and state the interests therein sought to be condemned. . . ." In the instant cases, each award that the department made contains a legal description of the land taken, and describes the rights of access that were also taken.

Section 32.09(6), Stats., specifies the compensation to be paid for a partial taking, and requires the condemnor to consider ". . . the following items of loss or damage to the property where shown to exist . . . (b) Deprivation or restriction of existing right of access to highway from abutting land. . . ." The Department interprets the phrase "existing right of access" to mean only those access points that are existing or in use at the time of the taking, and that became driveways for which the Department previously granted permits pursuant to sec. 86.07(2), and Wis. Admin. Code ch. Hy 31.

The Department also argues that a property owner's right of access to a public highway is not absolute, but is subject to reasonable regulation by the state in the exercise of its police power. Because the Department may impose reasonable restrictions on access points pursuant to an authorized exercise of the police power, it asserts that it need not compensate the condemnees for the restrictions placed on their rights of access. We disagree.

The Department cites sec. 86.07(2), Stats., Wis. Admin. Code ch. Hy 31, and sec. 84.25, as examples of its authority to impose reasonable restrictions on an abutting property owner's rights of access. Under sec. 86.07(2), any person whose property abuts a state trunk highway must obtain a permit from the Department prior to installing any driveway access between the property and the driveway. Wis. Admin. Code, ch. Hy 31, sets forth standards by which the Department reviews the sec. 86.07(2) permit applications. Under sec. 84.25, the Department may designate controlled access highways pursuant to the exercise of its police power, and abutting property owners have only a controlled right of access after the highway is so designated. *See* sec. 84.25 (6).

The Department asserts that because it has the authority to restrict access to a highway designated as a controlled access highway under sec. 84.25, Stats., and to regulate access points under Wis. Admin. Code ch. Hy 31, it may also restrict rights of access to a relocated highway in the exercise of its police power, even though it has not followed the procedure for designating a highway a controlled access highway under sec. 84.25. The Department contends that in these cases, it is inconsistent to suggest that it may restrict access to highway 59 by denying an application for a driveway permit made pursuant to Wis. Admin. Code ch. Hy 31, or by designating the highway as a controlled access highway, but require the Department to compensate the property owner for a taking of access rights pursuant to a condemnation proceeding.

In *Stefan Auto Body v. State Highway Commission,* 21 Wis. 2d 363, 124 N.W.2d 319, (1963), we recognized that a person who owns property abutting a public street has a right of access, or right of ingress and egress, to and from the street. 21 Wis. 2d at 370. Although this right is subject to reasonable regulations in the public interest, it is a property right, the taking of which requires compensation. *Schneider v. State,* 51 Wis. 2d 458, 463, 187 N.W.2d 172 (1971).

 Under the Department's interpretation of sec. 32.09 (6) (b), Stats., "existing right of access" would mean "existing access points that have been improved and for which the department had granted permits under sec. 86.07 (2), and Wis. Admin. Code ch. Hy 31." This construction, however, renders the inclusion of the word "right" superfluous. The deprivation or restriction that sec. 32.09 (6) (b) specifically refers to is that of an "existing *right* of access," not "existing access points." (Emphasis added.) The statute also recognizes that

even though the state may deprive or restrict access without compensation pursuant to "a duly authorized exercise of the police power," when a partial taking occurs, the loss of an existing right of access is an item of loss or damage to the remaining property that is compensable.

The Department's action in these cases, and the property rights taken, are similar to the facts in our prior decision in *Bear v. Kenosha County*, 22 Wis. 2d 92, 125 N.W.2d 375 (1963). In *Bear*, the county condemned land for the widening of a state trunk highway. The condemnation award indicated that the state was also taking the access rights of landowners whose property abutted the highway. The county argued that because the highway was a state trunk highway, access to and from the adjoining land was controlled prior to the taking, and was therefore of no value at the time of the condemnation. We rejected this assertion and noted "At the outset the defendant is confronted with the inconsistency in its argument that its award included access rights and it must be presumed the defendant recognized the plaintiffs had rights of access to some degree." 22 Wis. 2d at 95.

Similarly, in these cases, the Department recognized that the condemnees had rights of access at the time of the condemnation, and specifically stated in the three condemnation awards that it was taking not only portions of the Narlochs', Porters' and Martys' land, but "[a]lso, all existing, future or potential common law or statutory easements or rights of access . . . ." In addition, it is undisputed that the Department did not proceed in these cases under sec. 84.25, Stats., which governs the procedure for designating a controlled access highway. The Department's action in each case was a condemnation pursuant to sec. 84.09(2), which encom-

passed a taking of all access rights, not a mere restriction or regulation of the exercise of those rights pursuant to a duly authorized exercise of the police power.

We additionally find no merit in the Department's contention that it is inconsistent to say that it may restrict access points under sec. 86.07(2), Stats., and deny permits under Wis. Admin. Code ch. Hy 31 without paying compensation, yet be required to compensate a taking of access rights. The regulation of driveway construction and location under sec. 86.07(2) does not deny the right to access, but merely regulates access in the interests of public safety and convenience. *See Bear,* 22 Wis. 2d at 96. In these cases, however, the Department is not merely regulating access but is taking all rights of access except for specific access points described in the awards. In addition, the Department is taking the condemnees' right to apply for future permits under sec. 86.07(2), and Wis. Admin. Code ch. Hy 31, and to be judged on the criteria contained in those provisions. At oral argument, the Department indicated that the condemnees in these cases conceivably could still apply for permits under sec. 86.07(2), and Wis. Admin. Code ch. Hy. 31. The Department conceded, however, that it could summarily deny such requests without determining if the criteria for obtaining the permits were satisfied because, as the condemnation awards specify, the state has already taken "all existing, future or potential . . . rights of access."

We therefore hold that "existing right of access" in sec. 32.09(6)(b), Stats., includes the right of an abutting property owner to ingress and egress, and the right to be judged on the criteria for granting permits for access points under sec. 86.07(2) and Wis. Admin. Code ch. Hy 31.

*Foundation For Admissibility of Evidence of Damages Due to Loss of Access Rights*

The Department also contends that a property owner is not entitled to severance damages for loss of access rights except when the condemnee establishes a foundation that there was a reasonable probability that he or she could have exercised those rights in the reasonably foreseeable future by obtaining permits from the Department for improved access points. We disagree. The imposition of such a foundation requirement would place the condemnee in the untenable position of attempting to elicit testimony from the Department to the effect that the Department would have granted such permits, with the Department recognizing that an affirmative answer could result in an increase in damages it would be required to pay to the condemnee.

The measure of compensation for a partial taking set forth in sec. 32.09(6)(b), Stats., contemplates damage to remaining property from the deprivation or restriction of access rights to the highway from abutting property. Section 32.09(2), provides: "In determining just compensation the property sought to be condemned shall be considered on the basis of its most advantageous use but only such use as actually affects the present market value."

In *Bear,* the county took a portion of the plaintiffs' property along a state highway that had not been designated a controlled access highway under sec. 84.25, Stats. At trial, the plaintiffs' experts testified that the highest and best use of the frontage abutting the highway was primarily for residential use. The experts also testified that the restriction of access to the highway substantially reduced the value of the remaining property because the highest use of the land was destroyed. The county argued, however, that because the highway was a state trunk highway, access to and from the ad-

joining land was controlled prior to the taking and was of no value. We rejected that assertion and held that the extent of the restrictions and limitations and the effect on value were jury questions. We also noted that although the provisions of 86.07(2) regulate access, they do not deny the right of access, and the jury could consider this in determining the weight to be given to the testimony concerning the value of the property affected. 22 Wis. 2d at 96.

If the highest and best use of a condemnee's property is development that had not occurred at the time of the taking, and if this development potential is restricted or destroyed because of the loss of access rights due to a condemnation, the loss of those rights is relevant to a determination of the damages to the remainder of the property, and the fair market value of the condemnees' property after the taking. We therefore hold that a condemnee seeking severance damages due to a taking of access rights must establish a foundation that prior to the taking, there was a reasonable potential in the foreseeable future for developing his or her property in accordance with its highest and best use, and that this potential for development has been diminished because of the loss of access rights. Once that foundation is established, evidence of expert testimony concerning diminution in value of remaining land due to loss of access rights is admissible. The weight to be given this evidence is for the trier of fact. As we stated in *Bear*, the experts' opinions including their theory and basis of value are for the jury to evaluate against any contention by the state that these access rights were so impaired, restricted, and controlled as to have little or no value.

In *Narloch*, the Narlochs' expert testified that prior to the taking, the highest and best use of the Narlochs'

land was for residential development. In an offer of proof, the Narlochs indicated that their expert would have testified that given his opinion concerning the highest and best use of the Narlochs' property, and because of the restriction on access rights due to the taking, the expert would have allocated approximately $3,900 in severance damages to the restriction in access. The circuit court did not allow the expert to testify concerning alleged damages due to loss of access rights. It was reversible error to exclude this evidence, and the Narlochs are therefore entitled to a new trial.

In *Marty*, the Martys' expert testified that prior to the taking, the highest and best use of the Martys' property was for development purposes along the lines allowed by zoning for that area, and that the property was already zoned for development purposes. The expert also testified that after the taking, the highest and best use is still for developmental purposes but with considerably reduced utility because of the two tracts that were split by the relocation of highway 59. The expert testified that prior to the taking, he believed that the property would have developed in large sites in accordance with the four access points to old highway 59. The expert's testimony indicates that after the taking, the Martys may have more difficulty in proceeding with this development. He then expressed the opinion that the 20.45 acres lying west of new highway 59 were damaged to the extent of $300 per acre because of the triangulation of land and the restriction of a single access point to new highway 59. The testimony indicates that the proper foundation was laid, and the circuit court properly admitted the expert's testimony concerning severance damages due to loss of access rights.

In *Porter*, the Porters' expert testified that the town of Eagle had experienced accelerated growth and a pattern of continuing development up to the date that the

state took part of the Porters' property. The expert also testified that prior to the taking, the highest and best use of their property was for future development purposes with interim agricultural usage. The expert also testified that because of the restriction of access resulting from the taking, the property will be less desirable for future development purposes. Because the proper foundation was laid for the expert's testimony concerning severance damages due to loss of access rights, the circuit court properly admitted this testimony.

*Litigation Expenses Under Sec. 32.28, Stats.*

The department also argues that prior to awarding litigation expenses to the Porters and Martys pursuant to sec. 32.28, Stats., the circuit court in both cases should have conducted an evidentiary hearing to determine the reasonableness of the expenses sought. When the Porters and the Martys filed motions after verdict, they both attached to these motions a "bill of costs," listing their costs and disbursements, including attorney fees. They also attached a copy of a bill for appraisal services, and an affidavit in support of the bill of costs and attorney fees. At the subsequent hearings on the motions after verdict in both cases, at which attorneys for the Department were present, the circuit court considered the bill of costs, and the Department had the opportunity to respond to the items submitted.

There is no express requirement in sec. 32.28, Stats., that the circuit court hold an evidentiary hearing before awarding litigation expenses. We recognize, however, that complex condemnation cases may present the possibility of extensive litigation expenses, particularly appraiser and attorney fees. In such cases, a full evidentiary hearing may be essential in order to substantiate the expenses and to allow the condemnor the opportunity to present evidence to refute the expenses sought by the

condemnee. In less complex cases, however, to require an evidentiary hearing would impose a costly and time consuming burden on all parties, and would constitute an unnecessary waste of judicial resources. Because the utility of a full evidentiary hearing varies depending on the circumstances of each case, no useful purpose would be served by imposing an absolute requirement that a full evidentiary hearing be held in all cases.

We therefore hold that there is no absolute requirement under sec. 32.28, Stats., for an evidentiary hearing to establish the reasonableness of litigation expenses awarded to a condemnee after he or she files a bill of costs. If the circumstances of a particular case indicate that an evidentiary hearing is warranted, however, the circuit court may in its discretion, and on its own initiative or at the request of a party, hold a hearing to allow the parties to present evidence to determine the amount of litigation expenses to be awarded.

We also conclude that the circuit court did not abuse its discretion in awarding litigation expenses without holding an evidentiary hearing in either *Porter* or *Marty*. In both cases, the condemnees submitted bill of costs to the circuit court and to opposing counsel representing the Department. In each case, the court held a hearing on the motion after verdict, during which the bill of costs was discussed. At each hearing, the Department had an opportunity to voice objections to the bill of costs. The court in each case considered and responded to these objections prior to awarding the expenses. The court's action in each case was reasonable.

The Department additionally argues that the award of litigation expenses to the Porters should not be sustained for two reasons. The first reason is that incident to preparation for trial, the Porters' appraiser was deposed. The circuit court had entered a protective order

requiring the Department to pay the appraiser $100 as part of an expert witness fee for his appearance, and to reimburse the appraiser for his travel time. The Department complied with this order. The bill of costs, however, includes a request for reimbursement at an hourly rate for the appraiser's time spent traveling to and appearing at the deposition. The Department argues that the appraiser had already been paid a reasonable fee in accordance with the protective order, and that the request in the bill of costs should have been disallowed. We disagree.

At the hearing on the motion after verdict, the Department admitted that the appraiser's bill submitted with the bill of costs included a credit for the amount the Department previously paid for the appraiser's deposition expenses. The circuit court stated on the record that ". . . the monies required by the court's order in connection with the motion before the hearing and trial of these matters was to be an advancement toward the payment of appraiser's fees and to cover immediate transportation costs thereafter and was not meant to be the full and complete payment, but it was certainly meant to be given credit for." The court therefore did not intend the $100 payment to be the total fee but only an advancement toward a reasonable fee. The appraiser's bill indicates that credit was given for the amount of the advancement, and the court did not abuse its discretion in allowing the amount charged that was over and above the amount credited.

The Department's second challenge to the bill of costs concerns the appraiser's charge of his travel time to and from court at a specified hourly rate. The Department contends that under sec. 32.28(1), Stats., the condemnor is only liable for reasonable fees and expenses incurred by the condemnee's appraiser. The Department argues that the appraiser's travel expenses are not rea-

sonable expenses, especially since the Porters selected an appraiser from another city.

We conclude that the circuit court properly allowed the appraiser's travel expenses as part of the expenses awarded. There is no provision in ch. 32, Stats., indicating that the condemnee must either choose an appraiser from a specific locale or risk losing the right to recover reasonable appraisal fees and expenses under sec. 32.28. Section 32.28(1) provides, in part: ". . . 'litigation expenses' means the sum of the costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees necessary to prepare for or participate in actual or anticipated proceedings before . . . any court under this chapter." In order to participate in the deposition, the appraiser had to travel from out of town, and part of his incurred expenses included loss of time due to travel. We also conclude that the court had the discretion to determine reasonable appraisal fees, and that it did not abuse its discretion in allowing the expert's fee to include the amount allocated for travel time.

*Litigation Expenses Incurred in an Appeal*

The Porters and Martys argue that the term "litigation expenses" in sec. 32.28, Stats., means recovery of those expenses that a prevailing condemnee incurs in an appeal. They therefore argue that in addition to expenses awarded by the circuit court, they should also recover expenses incurred in their appeals. We agree.

Section 32.28(1), Stats., provides in relevant part: "In this section, 'litigation expenses' means the sum of the costs, disbursements and expenses, including reasonable attorney . . . fees necessary to prepare for or participate in actual or anticipated proceedings before . . . *any court* under this chapter. . . ." (Emphasis added.) Section 32.28(3) sets forth the circumstances by which

a condemnee is awarded litigation expenses in lieu of costs under ch. 814. Section 32.05, which governs condemnation proceedings for sewers and transportation facilities, allows a party to appeal from a condemnation commission's award to the circuit court. Section 32.05 (10). In addition, sec. 32.05(13) provides that a party may appeal to the court of appeals within 6 months of notice of entry of a circuit court judgment.

The legislative council comment to ch. 440, Laws of 1977, which enacted sec. 32.28, Stats., provides in relevant part:

"Chapter 440 allows the landowner to recover the *full expenses* of litigation (including reasonable attorney, appraisal and engineering fees) whenever any of the following occurs:

". . .
". . .
". . .
"4. The court awards just compensation which exceeds the jurisdictional offer (or the highest written offer of the condemnor prior to the jurisdictional offer) by at least 15% and at least $700." (Emphasis added.)

This indicates that if the just compensation ultimately awarded to a condemnee exceeds the jurisdictional offer or the condemnor's highest written offer by a least 15 percent and at least $700, the condemnee is entitled to full recovery of his or her litigation expenses. Under sec. 32.28(1), these expenses include reasonable attorney fees incurred in proceedings before "any court under this chapter [chapter 32] . . . ." As previously noted, ch. 32 specifically refers to appeals to the court of appeals.

To allow litigation expenses incurred in an appeal to a condemnee who prevails on appeal is consistent with the policy of ensuring that a condemnee receive just compensation when part or all of the condemnee's prop-

erty has been taken. In order to ensure that he or she is receiving just compensation, the condemnee may be forced to incur litigation expenses in proceedings in both the circuit and appellate courts. The legislature has determined that if the court awards just compensation exceeding the jurisdictional offer or the condemnor's highest written offer by a specified amount, the condemnee must receive litigation expenses incurred in the efforts to ensure that he or she is justly compensated. If this determination is affirmed on appeal, and the condemnee prevails, it would be inconsistent to allow the condemnee to recover only those litigation expenses incurred in circuit court proceedings, but not those incurred in an appeal. We therefore hold that if one of the conditions in sec. 32.28(3) is satisfied, and the circuit judgment is appealed, a condemnee who prevails on appeal may recover litigation expenses, including reasonable attorney fees, incurred in the appeal.

There has been no determination in either *Porter* or *Marty* concerning the amount of litigation expenses that the Porters and Martys incurred in their respective appeals. We therefore remand both cases to the circuit court with directions to determine these amounts, and to enter supplementary orders incorporating these determinations.

The Porters and Martys also argue that the Department should pay the cost of additional statements of transcript ordered for their respective appeals. Both the Porters and Martys requested the circuit court to order the state to include additional portions of the trial transcript in the statement on transcript. The court issued the orders mandating that the Department include the requested material. The court also stated, however, that it was for the court of appeals to determine who had responsibility for the costs of the additional statements on transcript. Because we are remanding for determina-

tions of litigation expenses incurred in the appeals in *Porter* and *Marty*, we also remand to the circuit court in both cases to determine the costs in each case of this additional statement on transcript, and to whom that cost will be assessed.

Finally, the Martys argue that they are entitled to double costs, exclusive of attorney fees, because the Department's appellate brief and appendix allegedly are insufficient to provide a fair and accurate portrayal of the record. On remand of No. 82–463, we direct the circuit court to also consider this request in determining the Martys' litigation expenses on appeal.

*By the Court.*—The decision of the court of appeals in No. 82–052 is affirmed. The judgment of the circuit court in No. 82–462 is affirmed, and cause remanded to the circuit court for further action consistent with this opinion. The judgment of the circuit court in No. 82–463 is affirmed, and cause remanded for further action consistent with this opinion.