DAVID T. PROSSER, J.
1 55. (dissenting). The petitioner in this case, Hoffer Properties, LLC *416 (Hoffer), asks the following question: "What is the standard as to when DOT must pay compensation when it has eliminated an abutting property owner's direct access to an existing controlled-access state trunk highway?" Hoffer's answer is that the DOT must pay compensation when a jury finds that the replacement access provided by DOT is not reasonable.
¶ 56. The circuit court answered the question differently. It denied Hoffer a jury, concluding as a matter of law that no compensation is required if DOT provided any replacement access to the owner. This position is supported by the State in its brief: "Under Wisconsin law, damage resulting to property through the exercise of the police power is not compensable. There is no compensable taking when direct access to a controlled-access highway is denied as long as other access is given or otherwise exists."
¶ 57. The lead opinion concludes that "when DOT changes an abutting property owner's [direct] access to a controlled-access highway but other access is given or exists, the abutting property owner is precluded from compensation ... as a matter of law and no jury determination of reasonableness is required." Lead op., ¶ 6. The lead opinion adds that "[Reasonableness is the wrong standard to apply" because the provision of "some" access preserves the property owner's right of access; thus, no taking occurs. Id.
¶ 58. The implications of this decision are stark. Henceforward, juries are precluded from ever finding that the alternative access provided to replace direct access to a controlled-access highway is unreasonable. By transforming a traditional fact question into a question of law, the court justifies depriving prop *417 erty owners of their statutory right to a jury trial and also bars circuit judges from ever finding that alternative access is not reasonable. According to the lead opinion, the only time the DOT is required to pay compensation to a property owner for eliminating direct access to a controlled-access highway is when the alternative access is so circuitous or so grossly inadequate that it deprives "the abutting owner of all or substantially all beneficial use of the property." Id., 1 20 n.12.
¶ 59. Because I disagree with the lead opinion's analysis and conclusions, I respectfully dissent.
I
¶ 60. State Trunk Highway 19 (STH 19) is a Wisconsin highway that stretches from a point near Mazomanie in Dane County to the point where it reaches STH 16 on the east side of Watertown in Jefferson County. Its total length is about 60 miles. On June 14, 2002, the DOT designated 13.76 miles of STH 19 as "controlled-access" highway, pursuant to Wis. Stat. § 84.25. The eastern end of the controlled-access segment in Jefferson County was Frohling Lane in the Town of Watertown, west of the City of Watertown.
¶ 61. Hoffer owned a 9.90-acre parcel of land abutting STH 19. This parcel is located south of STH 19. It is separated from Frohling Lane to its east by another parcel of land. When STH 19 became a "controlled-access" highway in 2002, Hoffer retained direct access to STH 19 by means of two driveways.
¶ 62. Then, as the lead opinion notes, in 2008 the DOT undertook a highway improvement project that relocated STH 26 so that it intersected with STH *418 19 just west of Hoffer's property. Lead op., ¶ 8. On December 29, 2008, as part of this project,
DOT eliminated. Hoffer's direct access to STH 19. DOT acquired through eminent domain both .72 acre of Hoffer's land as well as a temporary limited easement in order to create alternate access to Hoffer's property. DOT tendered to Hoffer $90,000 for this taking. Hoffer's existing direct access to STH 19 was replaced by extending Frohling Lane (a north-south roadway that intersects with STH 19) westward to Hoffer's property.

Id.

¶ 63. The DOT remedied its elimination of Hoffer's direct access by extending Frohling Lane to the west, through the entire width of Hoffer's property, so that Hoffer would have access to his house and business from the south after a new driveway was constructed, and the large parcel to the west of Hoffer's property would have access to STH 19 by way of this new road. The extension of Frohling Lane is now called Groth Lane.
¶ 64. "Hoffer's replacement access requires vehicles to travel roughly 1,000 feet to reach STH 19." Id. The owners/occupiers of the adjacent parcel to the west presumably must travel a considerably longer distance to reach STH 19.
¶ 65. To reach Hoffer's property, a person traveling east on STH 19 must turn right on Frohling Lane, drive to the end of the lane, turn right on Groth Lane, find the driveway for Hoffer's property, and then turn right into that driveway. Thus, as a practical matter, the distance to be travelled is not the only consideration in evaluating whether an alternative access is reasonable. Multiple factors may have to be taken into account.
*419 ¶ 66. On the facts here, I would have no difficulty in affirming a jury determination that DOT had provided reasonable access to Hoffer's property. The new access is no doubt inconvenient. It may require special signage. But it is not unreasonable in the totality of the circumstances.
¶ 67. My problem is not with the result in this case. My problem is with the law created in this case — approving the fact that a jury was never permitted to hear evidence and make a judgment. The lead opinion says in essence that there is no place for a jury in these situations — that the result would be the same if the new access required vehicles to travel 10,000 feet — closer to two miles — instead of 1,000 feet, to reach STH 19. The lead opinion says that "reasonableness" is the wrong standard to apply in such situations because whatever the DOT deems "necessary or desirable" cannot be found unreasonable as a matter of law. In my view, this is ill-advised new law.
II
¶ 68. This court has stated that "a person who owns property abutting a public street has a right of access, or right of ingress and egress, to and from the street. . . . [A]lthough this right is subject to reasonable regulations in the public interest, it is a property right, the taking of which requires compensation." Nat'l Auto Truckstops, Inc. v. State, Dep't of Transp., 2003 WI 95, ¶ 39, 263 Wis. 2d 649, 665 N.W.2d 198 (quoting Narloch v. State, Dep't of Transp., 115 Wis. 2d 419, 430, 340 N.W.2d 542 (1983)). For this proposition, Narloch cited Schneider v. State, 51 Wis. 2d 458, 463, 187 N.W.2d 172 (1971). Schneider, in turn, had cited Carazalla v. State, 269 Wis. 593, 70 N.W.2d 208, 71 *420 N.W.2d 276 (1955), and Stefan Auto Body v. State Highway Commission, 21 Wis. 2d 363, 124 N.W.2d 319 (1963). The principle above is codified in Wis. Stat. § 32.09(6)(b).
¶ 69. Paragraph (b), however, also contains a qualification to the principle: compensation is required for "[deprivation or restriction of [an] existing right of access to [a] highway from abutting land, provided that nothing herein shall operate to restrict the power of the state... to deprive or restrict such access without compensation under any duly authorized exercise of the police power." (Emphasis added.) Deprivations and restrictions pursuant to Wis. Stat. § 84.25 are exercises of the police power.
¶ 70. Put bluntly, the state does not have to pay compensation for depriving a landowner of direct access to a controlled-access highway. It does not follow, however, that reliance on the police power precludes altogether any need for compensation. Although paragraph (b) See Carazalla, 269 Wis. at 608b. Some access must be provided to avoid the necessity of compensation. The issue presented by this opinion is whether no compensation is required if DOT provides any alternative access — even if that alternative access is plainly unreasonable — so long as the property owner cannot meet the requirements for inverse condemnation.
¶ 71. The State's position is uncompromising: "[D]amage resulting to property through the exercise of the police power is not compensable. There is no compensable taking when direct access to a controlled-access highway is denied as long as other access is given or otherwise exists." The lead opinion adopts this position.
*421 ¶ 72. Other judges have been less absolute. For example, Justice Oliver Wendell Holmes, writing for the Supreme Judicial Court of Massachusetts, stated:
We assume that one of the uses of the convenient phrase "police power" is to justify those small diminutions of property rights which, although within the letter of constitutional protection, are necessarily incident to the free play of the machinery of government. It may be that the extent to which such diminutions are lawful without compensation is larger when the harm is inflicted only as incident to some general requirement of public welfare. But, whether the last-mentioned element enters into the problem or not, the question is one of degree, and sooner or later we reach the point at which the constitution applies and forbids physical appropriation and legal restrictions alike, unless they are paid for.
Bent v. Emery, 53 N.E. 910, 911 (Mass. 1899) (emphasis added).
¶ 73. Hoffer persuasively demonstrates that the spirit conveyed by Justice Holmes has run through Wisconsin law in cases involving controlled-access highways. Hoffer cites Schneider, 51 Wis. 2d 458; Surety Savings & Loan Ass'n v. State (Division of Highways), 54 Wis. 2d 438, 195 N.W.2d 464 (1972); Jantz v. State (Division of Highways), 63 Wis. 2d 404, 217 N.W.2d 266 (1974); and Seefeldt v. State, Department of Transportation, 113 Wis. 2d 212, 336 N.W.2d 182 (Ct. App. 1983). These cases were preceded by Carazalla, 269 Wis. 593, and Nick v. State Highway Commission, 13 Wis. 2d 511, 109 N.W.2d 71, 111 N.W.2d 95 (1961). These cases will be discussed in chronological order.
*422 Carazalla v. State (1955)
¶ 74. In Carazalla, Justice George Currie provided a broad statement of the law:
The general rule is that damage resulting to property through the exercise of the police power is not compensable. We consider the following statement appearing in 11 McQuillin, Mun. Corp. (3d ed.), p. 319, sec. 32.27, to be particularly pertinent to the facts of the instant case:
"The question of what constitutes a taking is often interwoven with the question of whether a particular act is an exercise of the police power or of the power of eminent domain. If the act is a proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable."
Limited-access highways and their effect upon the rights of abutting property owners to compensation are the subject of three excellent law-review articles in which are cited the court decisions bearing on the question. The authors of all three articles agree that the limiting of access to a public highway through governmental action results from the exercise of the police power, and that in the case of a newly laid out or relocated highway, where no prior right of access existed on the part of abutting landowners, such abutting landowners are not entitled to compensation. On the other hand, the authorities cited in these articles hold that where an existing highway is converted into a limited-access highway with a complete blocking of all access from the land of the abutting owner, there results the taking of the pre-existing easement of access for which compensation must be made through eminent domain. However, if the abutting landowner's access to the highway is merely made more circuitous, no compensation should be paid according to the authors of these articles .... In the *423 instant case the plaintiff landowners still have their right of access to old U.S. Highway 51 which has not been closed off.
Carazalla, 269 Wis. at 608a-608b (emphasis added; footnotes omitted). In my view, Carazalla implied that alternative access that is merely "more circuitous" is reasonable. It does not address what might be unreasonable.
Nick v. State Highway Commission (1961)
¶ 75. Petitioner acquired property in Waukesha County abutting STH 30, a controlled access highway, also known as Bluemound Road. There had never been driveways from the parcel directly onto Highway 30. The petitioner was denied access to Highway 30. Justice Timothy Brown wrote:
An impairment of the use of property by the exercise of police power, where the property itself is not taken by the state, does not entitle the owner of such property to a right to compensation. The law on this subject remains as we stated it in State ex rel. Carter v. Harper (1923), 182 Wis. 148, 153, 196 N.W. 451,—a zoning case,
"... incidental damage to property resulting from governmental activities, or laws passed in the promotion of the public welfare, is not considered a taking of the property for which compensation must be made."
The situation here bears a close analogy to the enactment and the effect of a zoning statute.
Neither in 1951 nor thereafter . .. did the state, through its highway commission, take any portion of Reinders' land. No doubt the control of his access to Highway 30 impaired the value of his land, the *424 impairment increasing as any part of the land lay distant from Calhoun road, but at the time of the commission's declaration Reinders still had access in every part of his land to Highway 30 via use of Calhoun road. His access to the highway is made more circuitous but no part of Reinders' land was taken. The diminution of its value due to the exercise by the state of its police power in making Highway 30 a controlled-access highway is not recoverable.
Nick, 13 Wis. 2d at 514-15 (first alteration in original; emphasis added).
¶ 76. Justice George Currie concurred, recognizing that Wisconsin's less-generous position on compensation appeared to represent a minority view:
Courts which hold that compensation must be paid to the abutting landowner in all cases where all direct-access rights to an existing highway are barred by statute, even though indirect access exists by means of service roads or connecting highways, consider that access rights constitute property distinct and apart from the land to which they appertain. The writer of this opinion believes this to be erroneous and that highway-access rights are but one of a bundle of rights which appertain to a parcel of real estate.
... If by reason of providing a frontage road, or the existence of a previously existing connecting highway, there is reasonable access to the controlled-access highway, no taking requiring compensation should be held to have occurred.
Id. at 517-18 (Currie, J., concurring) (emphasis added).
¶ 77. In Nick, the court approved "incidental damage" to property by exercise of the police power. In addition, "more circuitous" access to a controlled-access highway is very likely to satisfy Justice Cur *425 rie's "reasonable access." The opinion implicitly recognizes but does not define "unreasonable" access.
Schneider v. State (1971)
¶ 78. Justice Connor T. Hansen wrote:
The creation of a controlled-access highway is a proper exercise of the police power. This court has held that the exercise of the police power allows injury to property without compensation. Where access to a highway is controlled under the exercise of the police power and reasonable access remains, no compensation is required.
. . . The right of access or of ingress and egress of an abutting property owner is a property right the taking of which requires compensation. However, there was no issue in this case concerning the adequacy of access from the Schneider property by the frontage road. Since the state provided reasonable access to and from the Schneider property by a frontage road there was no taking requiring compensation.
. . . Deprivation of direct access to a highway does not constitute a taking of property provided reasonable access remains.
Schneider, 51 Wis. 2d at 462-63 (emphasis added; citations omitted).
¶ 79. The court in Schneider used the phrase "reasonable access" five times in stating the law, implying that "unreasonable access" does not satisfy the law.
Surety Savings & Loan Ass'n v. State (Division of Highways) (1972)
¶ 80. Justice Leo Hanley wrote for the court:
*426 The sole issue presented on this appeal is whether appellants should be compensated for damages suffered because of the termination of their right to direct access to U.S. Highway 41. .. . [I]njury to property resulting from the exercise of the police power of the state does not necessitate compensation.
. . . The designation of a highway as a controlled-access highway is an exercise of the police power.
This court has frequently held ... that there is no compensable taking when direct access to a controlled-access highway is denied, where other access is given or otherwise exists. Since the department in this case granted reasonable access to a service road when it terminated direct access to the highway, under the foregoing rules of law, the appellants are not entitled to compensation for the termination of their direct access.
. . . There is no suggestion that the frontage road access furnished is inadequate or unreasonable.
We conclude that appellants have no right to be compensated, under the provisions of sec. 32.09(6)(b), Stats., merely because access to their property has been made more circuitous.
Surety Savings, 54 Wis. 2d at 442—44, 446 (emphasis added; citations omitted).
¶ 81. It should be noted that the makeup of the Surety Savings court was exactly the same as the makeup of the Schneider court and that the Surety Savings opinion cites Carazalla, Nick, and Schneider with approval. Where a property owner suggests that alternative access is not reasonable, the court cannot ignore the issue.
*427 Jantz v. State (Division of Highways) (1974)
¶ 82. In Jantz Justice Robert W. Hansen quoted Schneider v. State at length, including this statement: "It [Schneider] repeats that the '. . . [deprivation of direct access to a highway does not constitute a taking of property provided reasonable access remains. . . .'" Jantz, 63 Wis. 2d at 410 (all alterations but first in original) (quoting Schneider, 51 Wis. 2d at 463). The Jantz majority again invoked the "reasonable access" test two years after the Surety Savings case.
Seefeldt v. State, Department of Transportation (1983)
¶ 83. Judge Clair Voss of the court of appeals wrote:
Initially, appellants had access to U.S. Highway 41. When U.S. Highway 41 was declared a controlled-access highway, the appellants' access was reduced to reasonable access. Now, the appellants allege that even this reasonable access is being taken away as the result of the taking of appellants' real estate in conjunction with the upgrading of U.S. Highway 41 to freeway status.
In general terms, the issue is whether the appellants have suffered a loss. However, the real issue is whether the state can use a two-stage approach to deprive landowners of their reasonable access to a highway without compensating them for this loss. We find that the appellants have suffered a loss because of this two-stage taking and, thus, should be compensated.
Seefeldt, 113 Wis. 2d at 213-14 (emphasis added).[27]
*428 ¶ 84. These cases may be summed up as follows: There is normally a distinction between an exercise of police power and eminent domain. The general rule is that damage resulting to property through an exercise of police power is not compensable. This general rule will prevail in any case involving a property owner's loss of direct access to a controlled-access highway as long as some reasonable access remains. This principle is found in Nick, Schneider, Surety Savings, Jantz, and Seefeldt. It is either stated directly or implied by reference to facts that demonstrate reasonable alternative access. The fact that alternative access is "circuitous" or "more circuitous" than before the deprivation does not render that access unreasonable per se. Something more deleterious is required. Although this court has never held that a particular exercise of the police power left a property owner with only unreasonable access to his or her property, the broad scope of reasonableness *429 does not preclude a finding of unreasonableness in specific circumstances.
¶ 85. This summary of the case law is simply inconsistent with the lead opinion. Consequently, either this summary is wrong or the lead opinion is making new law. I believe the lead opinion is making new law.
Ill
¶ 86. The lead opinion appears a bit uncomfortable with its decision to abandon "reasonable" access. It tries to hide the severity of its ruling by offering the fig leaf of inverse condemnation. This remedy is simply not adequate.
¶ 87. Generally a property owner who brings an inverse condemnation claim under Wis. Stat. § 32.10 can recover compensation by demonstrating that a restriction on use amounts to a regulatory taking that "den[ies] the property owner all or substantially all practical uses of a property." Brenner v. New Richmond Reg'l Airport Comm'n, 2012 WI 98, ¶ 45, 343 Wis. 2d 320, 816 N.W.2d 291 (citing Eberle v. Dane Cnty. Bd. of Adjustment, 227 Wis. 2d 609, 622, 595 N.W.2d 730 (1999)); see Just v. Marinette Cnty., 56 Wis. 2d 7, 15, 201 N.W.2d 761 (1972) ("Whether a taking has occurred depends upon whether 'the restriction practically or substantially renders the land useless for all reasonable purposes.'" (quoting Buhler v. Racine Cnty., 33 Wis. 2d 137, 143, 146 N.W.2d 403 (1966))).
¶ 88. But even property owners burdened by plainly unreasonable access will struggle to demonstrate that the remaining access renders the property substantially useless for all reasonable purposes. No *430 matter how outrageously inconvenient a means of access might be, the property owner will still retain some ability to access the property. Unreasonably inconvenient access does not necessarily mean that a property is substantially useless. A use based standard for inverse condemnation is fundamentally incompatible with a claim of unreasonable access because any access at all likely ensures that the property owner retains the ability to use the property.
¶ 89. In my view, whether alternative access is reasonable or unreasonable is a matter of degree, the determination of which should be submitted to a jury. "[W]hether a change in access is 'reasonable' ... is a question for a jury." Nat'l Auto Truckstops, 263 Wis. 2d 649, ¶ 21; Narloch, 115 Wis. 2d at 433-34; Bear v. Kenosha Cnty, 22 Wis. 2d 92, 96, 125 N.W.2d 375 (1963).
¶ 90. The right to trial by jury in these cases is embedded in Wis. Stat. § 32.05, especially in subsection (10) paragraph (a), subsection (11), and subsection (12). Trial by jury serves as a vital check by an impartial fact finder on the exercise of government power.
¶ 91. There is a great chasm between reasonable access and access so deficient that it constitutes inverse condemnation. The lead opinion permits government officials to push property owners into that chasm without compensation. That is contrary to the spirit with which our statutes ought to be administered. It is ominous when the check of trial by jury disappears, as well.
¶ 92. For the reasons stated, I respectfully dissent.

 Recently, the Supreme Court of South Dakota evaluated a similar two-stage taking situation in Hall v. State ex rel. *428 South Dakota Department of Transportation, 806 N.W.2d 217 (S.D. 2011). Property owners sought compensation after the state removed an interstate highway interchange adjacent to their property; a truck stop they operated on the property ceased operations within weeks of the interchange closure. Hall, 806 N.W.2d at 220-21. The property owners argued that they had relied upon the presence of the interchange to operate their business and that, when the state originally condemned a portion of their property to build the interstate highway, the appraisal used to calculate just compensation had assumed "that 'the presence of the interchange' would be a 'significant' and 'special benefit' to the Property." Id. at 220. Agreeing with that reliance argument, the court concluded that "an abutting property owner may acquire a compensable right of access to a controlled-access highway when access is designated and used to settle or mitigate damages in a condemnation, but that access is later removed." Id. at 226.