MICHAEL J. GABLEMAN, J.
1 1. This is a review of an unpublished decision of the court of appeals affirming a grant of partial summary judgment to the Department of Transportation (DOT).[1] Pursuant to Wis. Stat. § 84.25 (2007-08),[2] DOT eliminated Hoffer Properties, LLC's (Hoffer's) direct driveway connections to State Trunk Highway 19 (STH 19), a controlled-access highway. DOT also separately exercised its power of eminent domain to acquire .72 acre of Hoffer's land in order to extend Frohling Lane westward so as to connect Hoffer's property to the *383 highway. Hoffer received $90,000 in compensation for the .72 acre taken to construct the Frohling Lane extension. Hoffer is challenging the amount of compensation awarded.
¶ 2. Hoffer does not claim that the $90,000 was inadequate compensation for the .72 acre itself. Hoffer concedes that DOT properly designated STH 19 as a controlled-access highway.[3] Additionally, Hoffer agrees that the designation of a highway as "controlled-access" is a valid exercise of the police power and further agrees that such exercises are not compensable under the eminent domain statutes.[4] Hoffer argues, however, that because there was a partial taking of some portion of its property under eminent domain, the damages attributable to the loss of direct access to STH 19 are compensable pursuant to the partial takings subsection of the just compensation statute, Wis. Stat. § 32.09(6)(b). Consequently, Hoffer contends, compensation for the .72 acre must include the diminution of value of the property due to the loss of its direct access to the highway.
*384 ¶ 3. Hoffer appealed the amount of compensation to the Jefferson County circuit court, Honorable William F. Hue, presiding. At the circuit court, Hoffer argued that DOT owed him additional compensation for diminution of the value of the property due to the loss of direct access to STH 19 if a jury determined the access provided by the Frohling Lane extension is unreasonable. DOT argued that because it exercised its police power to eliminate Hoffer's direct access to STH 19 and because Hoffer has alternate access to the property through the Frohling Lane extension, Hoffer has reasonable access as a matter of law and no compensation is due. The circuit court agreed and granted partial summary judgment to DOT.
¶ 4. The court of appeals affirmed, concluding that under our holding in Surety Savings & Loan Ass'n v. DOT, 54 Wis. 2d 438, 195 N.W.2d 464 (1972), when DOT acts pursuant to the controlled-access highway statute "the inquiry is merely whether alternate access was provided." Hoffer Props., LLC v. DOT, No. 2012AP2520, unpublished slip op., ¶ 7 (Wis. Ct. App. May 1, 2014) (citing Surety Savings, 54 Wis. 2d at 444-45). The court of appeals determined that the circuit court's grant of summary judgment was proper because DOT provided alternate access to Hoffer's property. Id.
¶ 5. We consider two issues. First, whether DOT is duly authorized by Wis. Stat. § 84.25 to eliminate an abutting owner's direct access to a controlled-access highway and replace it with more circuitous access.[5] Second, whether the provision or existence of some *385 access to the abutting property obviates the need for a jury determination of "reasonableness" because the abutting property owner is precluded from compensation pursuant to Wis. Stat. § 32.09(6)(b).
¶ 6. First, we hold that Wis. Stat. § 84.25(3) authorizes DOT to change Hoffer's access to STH 19 in whatever way it deems "necessary or desirable." Such changes, including elimination of direct access points, are duly authorized exercises of the police power and are not compensable under Wis. Stat. § 32.09 as long as alternate access is given that does not deprive the abutting owner of all or substantially all beneficial use of the property. Second, we hold that when DOT changes an abutting property owner's access to a controlled-access highway but other access is given or exists, the abutting property owner is precluded from compensation pursuant to Wis. Stat. § 32.09(6)(b) as a matter of law and no jury determination of reasonableness is required. Reasonableness is the wrong standard to apply because the provision of some access preserves an abutting property owner's right of access to a controlled-access highway, and thus no taking compensable under Wis. Stat. § 32.09(6)(b) occurs. Accordingly, Hoffer is precluded from compensation under Wis. Stat. § 32.09(6)(b) because alternate access to the property was provided by the Frohling Lane extension. We therefore affirm the court of appeals.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 7. Hoffer Properties, LLC, owns the subject property, a 9.90 acre parcel of land located west of Watertown. The property's northern boundary is State Trunk Highway 19. Prior to 2008, the property had *386 direct access to STH 19 via two driveways. The property consists of a single-family dwelling, the first floor of which is Hoffer's real estate office; a barn that is rented for storage; and a machine shed that is partially rented as a workshop. On June 14, 2002, DOT designated 13.76 miles of STH 19 a "controlled-access" highway pursuant to Wis. Stat. § 84.25.[6] The *387 portion of STH 19 that was designated "controlled-access" included the portion that bounded Hoffer's property.
¶ 8. In 2008, DOT undertook a highway improvement project that involved relocating STH 26, which was to intersect with STH 19 to the west of Hoffer's property. DOT determined that it was necessary to change the access points to STH 19 in the vicinity of the relocated STH 26 as part of the project. To that end, on December 29, 2008,[7] DOT eliminated Hoffer's direct access to STH 19. DOT acquired through eminent domain both .72 acre of Hoffer's land as well as a temporary limited easement in order to create alternate access to Hoffer's property. DOT tendered to Hoffer $90,000 for this taking. Hoffer's existing direct access to STH 19 was replaced by extending Frohling Lane (a north-south roadway that intersects with STH 19) westward to Hoffer's property. DOT constructed a new driveway north from this extension to restore vehicular access to Hoffer's property.[8] Hoffer's replacement access requires vehicles to travel roughly 1,000 feet to reach STH 19.
¶ 9. On May 29, 2009, Hoffer appealed the amount of compensation it received to the Jefferson County circuit court pursuant to the eminent domain statutes, Wis. Stat. ch. 32.[9] Hoffer claimed that be *388 cause there had been a partial taking of its land, Wis. Stat. § 32.09(6)(b)[10] required DOT to include in the amount of compensation paid for the taking the amount by which the value of the property was diminished due to the loss of its direct access to STH 19. Hoffer conceded that DOT properly designated STH 19 a "controlled-access" highway pursuant to Wis. Stat. § 84.25.[11] Hoffer contended, however, that Wisconsin law requires DOT to pay compensation if DOT does not provide reasonable access between the highway and Hoffer's property. Citing our decision in National Auto Truckstops, Inc., v. DOT, 2003 WI 95, 263 Wis. 2d 649, 665 N.W.2d 198, Hoffer filed a motion in limine seeking an order that reasonable access was a jury question and that Hoffer was due compensation if a jury decided that the Frohling Lane access was unreasonable.
*389 ¶ 10. DOT moved for partial summary judgment, arguing that pursuant to our holding in Surety Savings "there is no compensable taking when direct access to a controlled-access highway is denied, where other access is given or otherwise exists." Surety Savings, 54 Wis. 2d at 443. DOT stated that because there was no dispute that it had acted pursuant to Wis. Stat. § 84.25, the controlled-access highway statute, and because the Frohling Lane extension had provided "other access" to the property, Hoffer's access was reasonable as a matter of law, so any claim for damages resulting from a change in Hoffer's access was barred.
¶ 11. Following a hearing, the circuit court denied Hoffer's motions and granted partial summary judgment to DOT. The circuit court found that the elimination of Hoffer's direct access to STH 19 was a noncompensable exercise of the police power and that reasonable access had been given as a matter of law. Thereafter, the circuit court granted Hoffer's motion to dismiss the action but preserved Hoffer's right to appeal.
¶ 12. On appeal, Hoffer argued that our holding in National Auto Truckstops required DOT to compensate the owner of abutting land if 1) DOT eliminates the property's direct access to a controlled-access highway; and 2) a jury determines that the replacement access is unreasonable. In an unpublished per curiam opinion, the court of appeals affirmed the circuit court. Hoffer Props., LLC, No. 2012AP2520, unpublished slip op. The court of appeals distinguished National Auto Truckstops by noting that the highway at issue there was not a controlled-access highway. Id., ¶ 6. The court of appeals determined that Surety Savings controlled, and "rejected] *390 Hoffer's argument that the question of whether the alternate access was reasonable was required to be decided by a jury, because reasonableness is not the correct legal standard to apply. Under Surety Savings, the inquiry is merely whether alternate access was provided." Id., ¶ 7. The court of appeals determined that because alternate access to Hoffer's property was provided, no compensable taking had occurred. See id.
¶ 13. Hoffer petitioned this court for review, which we granted on February 10, 2015.
II. STANDARD OF REVIEW
¶ 14. This case requires us to construe the controlled-access highway statute, Wis. Stat. § 84.25, and the just compensation statute, Wis. Stat. § 32.09. "The interpretation of a statute is a question of law that we review de novo." Crown Castle USA, Inc., v. Orion Constr. Grp., LLC, 2012 WI 29, ¶ 12, 339 Wis. 2d 252, 811 N.W.2d 332. "We interpret statutes independently, but benefit from both our prior analyses and that of the lower courts." Id. (citation omitted).
III. STATUTORY INTERPRETATION
¶ 15. Statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special defini *391 tional meaning." Id. "We attempt to give reasonable effect to every word, avoiding both surplusage and absurd or unreasonable results." Crown Castle USA, 339 Wis. 2d 252, ¶ 13 (citing Kalal, 271 Wis. 2d 633, ¶ 46). Further, "the context and structure of the statute are important, and we interpret the statute in light of 'surrounding or closely-related statutes.'" Masri v. LIRC, 2014 WI 81, ¶ 30, 356 Wis. 2d 405, 850 N.W.2d 298 (quoting Kalal, 271 Wis. 2d 633, ¶ 46).
IV. DISCUSSION
¶ 16. We first discuss whether the elimination of an abutting property owner's direct access to a controlled-access highway is an exercise of the police power duly authorized by Wis. Stat. § 84.25. We hold that it is, because the statute authorizes DOT to change access to such a highway as DOT deems "necessary or desirable." We then consider whether the provision of some alternate access to an abutting property owner's property obviates the need for a jury determination of "reasonableness" in controlled-access highway cases. We hold that reasonableness is the wrong standard to apply because when DOT changes an abutting property owner's access pursuant to Wis. Stat. § 84.25, no taking compensable under Wis. Stat. § 32.09(6)(b) occurs. Thus, in controlled-access highway cases abutting property owners are precluded from compensation for a change in access pursuant to Wis. Stat. § 32.09(6)(b) as a matter of law. However, exercises of the police power cannot deprive the owner of all or substantially all beneficial use of the property without compensation. If the replacement access is so circuitous as to amount to a regulatory taking of the property, then compensation is due and the abutting *392 property owner may bring an inverse condemnation claim pursuant to Wis. Stat. § 32.10.
A. ELIMINATION OF AN ABUTTING PROPERTY OWNER'S DIRECT ACCESS TO A CONTROLLED-ACCESS HIGHWAY IS A DULY AUTHORIZED EXERCISE OF THE POLICE POWER
¶ 17. The Fourteenth Amendment to the United States Constitution states that no person shall be deprived of property without due process of law. U.S. Const, amend. XIV, § 1. The Wisconsin Constitution provides that "[t]he property of no person shall be taken for public use without just compensation therefor." Wis. Const, art. I, § 13. "It has long been settled, however, that these constitutional provisions interpose no barrier to the exercise of the police power of the state." State ex rel. Carter v. Harper, 182 Wis. 148, 151, 196 N.W. 451 (1923). In other words, "injury to property resulting from the exercise of the police power of the state does not necessitate compensation." Surety Savings, 54 Wis. 2d at 443. A state acts under its police power when it regulates in the interest of public safety, convenience, and the general welfare of the public. See Nick v. State Highway Comm'n, 13 Wis. 2d 511, 513-14, 109 N.W.2d 71 (1961). Government action such as a regulation can amount to a compensable taking absent a physical occupation, however, "if [the effects of the governmental action] are so complete as to deprive the owner of all or most of his interest in the subject matter." Wisconsin Light & Power Co. v. Columbia Cty., 3 Wis. 2d 1, 5, 87 N.W.2d 279 (1958) (quoting United States v. General Motors Corp., 323 U.S. 373, 378 (1945)); see also Just v. Marinette Cty., 56 Wis. 2d 7, 15, 201 N.W.2d 761 *393 (1972) ("The protection of public rights may be accomplished by the exercise of the police power unless the damage to the property owner is too great and amounts to a confiscation."). Claims for such "regulatory takings" must be brought under Wis. Stat. § 32.10, the inverse condemnation statute.
¶ 18. The primary distinction between the power of eminent domain and the police power of the state most relevant to the present case is that government takings by eminent domain are compensable under Wis. Stat. § 32.09, while government actions pursuant to the police power are not, except in limited circumstances. See Wis. Stat. § 32.09(4), (6)(b). While we note that "[t]he right of access to and from a public highway is one of the incidents of the ownership or occupancy of land abutting thereon," 118th Street Kenosha, LLC, v. DOT, 2014 WI 125, ¶ 30, 359 Wis. 2d 30, 856 N.W.2d 486 (quoting Hastings Realty Corp. v. Texas Co., 28 Wis. 2d 305, 310, 137 N.W.2d 79 (1965)), we also note that, provided the damage does not amount to a regulatory taking of the property, Wisconsin. Stat. § 32.09(6)(b) allows the state "to deprive or restrict such access without compensation under any duly authorized exercise of the police power."
1. DOT Exercises the Police Power When It Designates a Highway "Controlled-Access"
f 19. By means of Wis. Stat. § 84.25, the controlled-access highway statute, the legislature has authorized DOT to designate up to 1,500 miles of heavily traveled, rural highways "controlled-access." This is a tightly circumscribed power, and the desig *394 nation can be made only if DOT first takes the specific steps enumerated in Wis. Stat. § 84.25(1). Among other things, DOT must conduct "traffic engineering surveys, investigations and studies" to determine whether the average traffic potential for the highway is in excess of 2,000 vehicles per 24-hour day. Wis. Stat. § 84.25(1). Before the controlled-access designation can be made, DOT is required to hold a public hearing on the matter following notice by publication in a county newspaper in the county in which the highway lies. Id. If, after the required surveys and investigations and the required public notice and hearing, DOT then finds that both the traffic potential is above 2,000 vehicles a day "and that the designation of the highway as a controlled-access highway is necessary in the interest of public safety, convenience and the general welfare," DOT "shall make its finding, determination and declaration to that effect, specifying the character of the controls to be exercised." Id. Copies of the finding, determination and declaration must be recorded with the register of deeds and filed with the county clerk as well as published in the same newspaper as notice of the hearing. Once the publication has taken place, the designation of "controlled-access" becomes effective. Id.
¶ 20. It is this designation of a highway as "controlled-access" that must be "necessary in the interest of public safety, convenience and the general welfare . . . ." Wis. Stat. § 84.25(1). Thus, it is the designation that is an exercise of the police power. Surety Savings, 54 Wis. 2d at 443 ("The designation of a highway as a controlled-access highway is an exercise of the police power."). The designation of a highway as "controlled-access" serves as a precondition for *395 the operation of the other subsections of Wis. Stat. § 84.25, the controlled-access highway statute. These subsections grant DOT expansive powers after it has properly designated part or all of a highway "controlled-access," including authority over how the general public and abutting property owners access the highway. See Wis. Stat. § 84.25(3)-(5), (7)-(10), (13). Once the highway has been designated "controlled-access," the statute authorizes DOT to subsequently change the access points in whatever way it "deems necessary or desirable."[12]
2. The Effect of a Controlled-Access Highway Designation on the Rights of Users and Abutting Property Owners
¶ 21. Wisconsin Stat. § 84.25 explains how the rights of users and abutting property owners are restricted by the designation of the highway as "controlled-access." See Wis. Stat. § 84.25(4)-(6), (11), (12). Pertinent here, the statute states that "[n]o person shall have any right of entrance upon . . . any controlled-access highway, or to or from abutting lands except at places designated and provided for such purposes, and on such terms and conditions as may be specified from time to time by the depart *396 ment." Wis. Stat. § 84.25(5). The statute also expressly curtails the access rights of abutting property owners, so that "[a]fter the designation of a controlled-access highway, the owners ... of abutting lands shall have no right or easement of access, by reason of the fact that their property abuts on the controlled-access highway or for other reason, except only the controlled right of access . . . ." Wis. Stat. § 84.25(6). Pursuant to this subsection, abutting property owners lose any right to compensation under Wis. Stat. § 32.09 for a change in access to the highway, provided some access remains, at the moment DOT makes the "controlled-access" designation. See Nick, 13 Wis. 2d at 515 ("The situation regarding the question of damages [for diminution of value of the property due to a loss of direct access to a controlled-access highway] was frozen when the commission declared highway 30 a controlled-access highway.").
¶ 22. The controlled-access highway statute is unique in its operation against abutting property owners,[13] and consequently the legislature limited DOT's authority to exercise the police power and make a "controlled-access" designation. The legislature prescribed elaborate procedures, including public notice and hearing, which DOT must follow to designate a highway "controlled-access." Furthermore, the legisla *397 ture limited the amount of highway DOT can designate "controlled-access" to 1,500 miles. DOT cannot change or restrict an abutting owner's existing access to a State trunk highway[14] without paying compensation pursuant to Wis. Stat. § 32.09 unless DOT has validly designated the highway "controlled-access" and alternate access to the highway has been provided. An abutting property owner's opportunity to object to DOT's exercise of the police power comes at the time of the hearing on whether to designate the highway "controlled-access." After a valid controlled-access designation has been made, however, DOT may change an abutting owner's access to the highway without compensation, pursuant to Wis. Stat. § 84.25(3), in whatever way it "deems necessary and desirable" as long as it provides other access that does not deprive the abutting owner of all or substantially all beneficial use of the property. After a valid controlled-access designation is made, the abutting owner's rights are curtailed — and the DOT subsequently acts — pursuant to a duly authorized exercise of the police power.
3. Hoffer's Direct Access was Eliminated Pursuant to an Exercise of the Police Power
¶ 23. Hoffer concedes that "DOT can deprive or restrict an abutting owner's right of access to a highway 'without compensation under any duly au *398 thorized exercise of the police power.' "[15] Hoffer further concedes that the designation of a highway as controlled-access is a duly authorized exercise of the police power and that DOT followed all of the required procedures in Wis. Stat. § 84.25(1) to designate STH 19 a controlled-access highway.[16] Hoffer argues, however, that the controlled-access highway statute does not grant DOT the power to subsequently eliminate its direct access to STH 19 and replace it with more circuitous access. Rather, Hoffer claims that Wis. Stat. § 84.25 grants DOT "authority to regulate an abutting owner's direct access ... to an existing State trunk highway without paying compensation to the owner, but such authority is not granted to eliminate that access." Hoffer's argument rests on its emphasis of certain language in the statute which grants DOT authority to prohibit anyone from entering or leaving the highway "except at places designated and provided for such purposes" and that abutting owners have no right of access "except only the controlled right of access." Hoffer claims that by using the words "except"[17] and "controlled," the legislature indicated its intent to withhold from DOT authority to eliminate an abutting owner's direct access to a controlled-access highway. Hoffer insists that DOT's authority to regulate does not include the authority to *399 eliminate preexisting direct access points and replace them with more circuitous access to a controlled-access highway.
¶ 24. Hoffer is mistaken. Its proposed construction is at odds not only with the plain language of the statutes, but with the clear holdings of our case law. There are three reasons why Hoffer's proposed interpretation cannot be correct.
¶ 25. First, Wis. Stat. § 84.25(3) states that "the department may use an existing highway. . . for a controlled-access highway . . . and so regulate, restrict or prohibit access to or departure from it as the department deems necessary or desirable." This very precise language indicates that the legislature granted expansive authority to DOT to change access to a controlled-access highway. By allowing DOT to designate an existing highway "controlled-access" and thereafter "regulate, restrict or prohibit access to or departure from it as the department deems necessary or desirable," the legislature granted DOT broad control over the entire portion of the existing highway that has been designated "controlled-access," including placement and replacement of access points. Because it is self-evident that elimination of direct access points is a means of "restrict [ing] or prohibit [ing] access," Hoffer cannot be correct when it argues that the statute does not grant DOT authority to eliminate Hoffer's direct access points.
¶ 26. Second, Wis. Stat. § 84.25(5) states that "[n]o person shall have any right of entrance" to a controlled-access highway, "or to or from abutting lands," except at places designated for such purposes "and on such terms and conditions as may be specified [by the department] from time to time" (emphasis added). The phrase "from time to time" indicates that *400 the legislature enabled DOT to periodically change the terms and conditions by which any person— abutter or otherwise — has access to a controlled-access highway. See Surety Savings, 54 Wis. 2d at 444-45 (holding that Wis. Stat. § 84.25(5) "demonstrate [s] the legislature's intent to give the highway commission continuing power to review and modify its authorizations for access to or across a controlled-access highway"). Replacing direct access with a more circuitous route is inarguably a change of the "terms and conditions" by which an abutter is allowed to enter the highway. We cannot accept a construction of a statute that does not "give reasonable effect to every word, avoiding both surplusage and absurd or unreasonable results." Crown Castle USA, 339 Wis. 2d 252, ¶ 13 (citing Kalal, 271 Wis. 2d 633, ¶ 46). Hoffer's reading of the statute ignores that part of § 84.25(5) which expressly vests DOT with authority to change the "terms and conditions" of access "from time to time." Thus, this argument must be rejected.
¶ 27. Third, Wis. Stat. § 84.25(6) states that once a highway is designated controlled-access, abutting owners "shall have no right or easement of access, by reason of the fact that their property abuts on the controlled-access highway or for other reason, except only the controlled right of access . . . ." Wis. Stat. § 84.25(6). This subsection eliminates an abutting property owner's right to compensation under § 32.09(6)(b) for a change to existing access at the moment DOT designates the highway "controlled-access." See Nick, 13 Wis. 2d at 515. Replacement access which results in a circuitous route rather than a direct one is a lawful — if regrettable — result of controlling access. See, e.g., Carazalla v. State, 269 *401 Wis. 593, 71 N.W.2d 276 (1955) (holding that circuity of travel is not a compensable item of damages); Nick, 13 Wis. 2d at 514 ("if no land is taken for the converted highway but the abutting landowner's access to the highway is merely made more circuitous, no compensation should be paid,"); McKenna v. State Highway Comm'n, 28 Wis. 2d 179, 184, 135 N.W.2d 827 (1965) ("There is no taking in the sense required by the statute, where, as in this case, another access route is available."); Stefan Auto Body v. State Highway Comm'n, 21 Wis. 2d 363, 369-74, 124 N.W.2d 319 (1963) (noting that in controlled-access highway cases circuity of travel resulting from a changed access point is not compensable).
¶ 28. In the present case, DOT conducted the required traffic engineering surveys, investigations, and studies to designate STH 19 "controlled-access." DOT held a public hearing on the matter on May 4, 2002, at the Milford Town Hall in Jefferson County after giving notice by three separate publications in two separate Jefferson County newspapers. It found that the potential traffic on STH 19 exceeded 2,000 vehicles per day and that it was necessary in the interest of public safety, convenience, and the general welfare to designate STH 19 "controlled-access." In sum, DOT did everything necessary to validly designate STH 19 "controlled-access." Upon that designation Hoffer lost its right to be compensated pursuant to Wis. Stat. § 32.09(6)(b) for a change to existing access resulting in circuity of travel. By the time Hoffer's direct access was eliminated, the controlled-access designation of STH 19 had been made, Hoffer's right of access had been curtailed to the "controlled right of access," DOT had determined it was "neces *402 sary or desirable" to change Hoffer's access to the highway, and DOT provided alternate access to Hoffer's property.
¶ 29. In light of the foregoing, we conclude that DOT's replacement of Hoffer's direct access with circuitous access to a controlled-access highway was done pursuant to an exercise of the police power duly authorized by Wis. Stat. § 84.25. Consequently the elimination of Hoffer's direct access to STH 19 was not compensable under Wis. Stat. § 32.09(6)(b).
B. IN CONTROLLED-ACCESS HIGHWAY CASES ABUTTING PROPERTY OWNERS ARE PRECLUDED FROM SEEKING COMPENSATION UNDER WIS. STAT. § 32.09(6)(b) FOR DAMAGE TO THE PROPERTY RESULTING FROM A CHANGE IN ACCESS
¶ 30. As noted above, when DOT designates a highway "controlled-access," an abutting owner's right to compensation pursuant to Wis. Stat. § 32.09(6)(b) for a replacement of existing access is eliminated. The abutting owner's remaining property right of access is the controlled right of access and not the right to access as it existed prior to or contemporaneously with the highway's designation as "controlled-access." The right of access
involves only the right to enter and leave the property without being forced to trespass across the land of another. It does not include any right to develop property with reference to the type of access granted or to have access at any particular point on the boundary lines of the property.
Surety Savings, 54 Wis. 2d at 444 (emphasis added). The controlled right of access is also subject to "such *403 terms and conditions as may be specified from time to time by [DOT]." Wis. Stat. § 84.25(5). Requiring an abutting property owner to access a controlled-access highway by a more circuitous route rather than directly is a "term[] and condition []" of access and a lawful means of "controlling" access. Consequently, this court has stated that "[w]here access to a highway is controlled under the exercise of the police power and reasonable access remains, no compensation is required." Schneider v. State, 51 Wis. 2d 458, 462, 187 N.W.2d 172 (1971) (citing Nick, 13 Wis. 2d 511). In both Schneider and Surety Savings, we held that because DOT had changed the abutting property owners' access pursuant to the controlled-access highway statute, the abutting property owners were precluded from seeking compensation for diminution of value of the property that resulted from the changed access. See Schneider, 51 Wis. 2d at 463-64; Surety Savings, 54 Wis. 2d at 443. Hoffer states that the property owners in neither case challenged the replacement access as "unreasonable," and contends that because it has made such a challenge it is due compensation for diminution of value damages if a jury determines its replacement access is unreasonable. For the reasons discussed below, we disagree.
1. A Taking Occurs Only if the Access Provided
Deprives the Abutting Property Owner of All or Substantially All Beneficial Use of the Property
¶ 31. A taking must occur before a viable claim for compensation can arise. Howell Plaza, Inc. v. State Highway Comm'n, 92 Wis. 2d 74, 80, 284 N.W.2d 887 (1979) (hereinafter Howell Plaza II). No compensable *404 taking occurs when DOT changes an abutting property owner's access to a controlled-access highway if other access is provided that does not deprive the owner of all or substantially all beneficial use of the property. Additionally, "duly authorized" acts of the police power that restrict or deprive access to a highway from abutting lands are not compensable pursuant to Wis. Stat. § 32.09(6)(b). When no taking compensable pursuant to Wis. Stat. § 32.09(6)(b) has occurred, there is nothing for a jury to determine pursuant to Wis. Stat. § 32.09(6)(b). Thus, in controlled-access highway cases, abutting property owners are precluded from compensation under Wis. Stat. § 32.09(6)(b) as a matter of law because no compensation is possible pursuant to that statute. Making a claim that the access given is unreasonable does not transform an act that is noncompensable pursuant to Wis. Stat. § 32.09(6)(b) into a compensable one.
¶ 32. This does not mean, however, that the provision of alternate access to a controlled-access highway precludes the abutting property owner from compensation in all possible contexts. Changes in access to a controlled-access highway may support a claim pursuant to Wis. Stat. § 32.10 for a regulatory taking of the property. "The protection of public rights may be accomplished by the exercise of the police power unless the damage to the property owner is too great and amounts to a confiscation." Just, 56 Wis. 2d at 15. The abutting property owner may not be deprived of all or substantially all beneficial use of his property without compensation by means of an exercise of the police power or otherwise. See E-L Enterprises, Inc., v. Milwaukee Metro. Sewerage Dist., 2010 *405 WI 58, ¶ 37, 326 Wis. 2d 82, 785 N.W.2d 409. "Whether a taking [pursuant to Wis. Stat. § 32.10] has occurred depends upon whether 'the restriction practically or substantially renders the land useless for all reasonable purposes.'" Just, 56 Wis. 2d at 15 (quoting Buhler v. Racine Cty., 33 Wis. 2d 137, 143, 146 N.W.2d 403 (1966)).
¶ 33. If the access DOT provides to a controlled-access highway deprives the abutting property owner of all or substantially all beneficial use of the property, DOT has taken the property and the change in access may support an inverse condemnation claim pursuant to Wis. Stat. § 32.10. However, "even if a highway construction project results in damages that are compensable under a particular statute, those damages cannot be recovered in a claim brought under the wrong statute." 118th Street, 359 Wis. 2d 30, ¶ 33. The proper mechanism for pursuing compensation for damages resulting from a change in access when DOT acts pursuant to the controlled-access highway statute is to bring an inverse condemnation claim under Wis. Stat. § 32.10. Thus, even had Hoffer's replacement access deprived it of all or substantially all beneficial use of its property, it could not recover under the Wis. Stat. § 32.09(6)(b) claim it has pursued here.
¶ 34. We recognize that this is a high standard for owners of property abutting a controlled-access highway to meet. Controlled-access highways are, however, limited and unique, and the legislature granted DOT authority to regulate access to them under the police power in whatever way DOT deems necessary and desirable provided the abutting property owner retains some access to the highway. The *406 legislature further codified the principle that valid exercises of the police power do not require payment under the just compensation statute, Wis. Stat. § 32.09, except in limited circumstances. We will not intrude upon these legislative choices.
2. It is Presumed that the Legislature Purposefully Omitted a Reasonableness Standard from the Controlled-Access Highway Statute
¶ 35. An analysis of the surrounding statutes in Wis. Stat. ch. 84 further compels the conclusion that "reasonableness is not the correct legal standard to apply" when DOT changes an abutting property owner's access to a controlled-access highway and thus no jury is required in controlled-access highway cases. Hoffer Properties, slip, op., ¶ 7. "When the legislature enacts a statute, it is presumed to act with full knowledge of the existing laws, including statutes." Mack v. Joint Sch. Dist. No. 3, 92 Wis. 2d 476, 489, 285 N.W.2d 604 (1979). The freeway statute, Wis. Stat. § 84.295, states that "reasonable provision for public highway traffic service or access to abutting property shall he provided by means of frontage roads ... or the right of access to or crossing of the public highway shall be acquired on behalf of the state" when DOT is undertaking a freeway project (emphasis added). Identical language appears in Wis. Stat. § 84.29, the interstate highway statute.
f 36. These statutes command that if DOT does not provide reasonable access to the highway by means of frontage roads when undertaking a freeway or interstate highway project, the abutting property *407 owners are due compensation under Wis. Stat. § 32.09 for a taking of their access rights.[18] This language is conspicuously absent from the controlled-access highway statute. Rather, Wis. Stat. § 84.25(6) states that owners "of abutting lands shall have no right or easement of access . . . except only the controlled right of access." We presume that had the legislature intended to include reasonableness as a component of Wis. Stat. § 84.25 and allow for compensation under Wis. Stat. § 32.09, it would have included this language in the statute, as it did for freeways and expressways in Wis. Stat. § 84.295 and for interstate highways in Wis. Stat. § 84.29.
¶ 37. The legislature, however, omitted this command from Wis. Stat. § 84.25. When DOT acts pursuant to the controlled-access highway statute, abutting property owners must be compensated for DOT's "acquisition" of their property only if DOT does not provide some access or if the access provided is so circuitous as to amount to a regulatory taking of the property. Consequently, when DOT provides alternate, albeit more circuitous, access to abutting lands from a controlled-access highway, no taking compensable pursuant to Wis. Stat. § 32.09(6)(b) occurs. It is axiomatic that where there is no compensable taking there will be no compensation. "[T]here must be a taking before there can be a claim for just compensation." Howell Plaza II, 92 Wis. 2d at 80; see also Surety Savings, 54 Wis. 2d at 444 ("Since appellants have *408 always had access available to them, no property right was taken."). The legislature did not require DOT to either provide reasonable access to a frontage road or to acquire the access rights of abutting property owners when it acts pursuant to Wis. Stat. § 84.25. Thus, in controlled-access highway cases, provision of some access preserves the abutting property owner's controlled right of access to the property; no jury is required to determine whether the replacement access is reasonable because in controlled-access highway cases reasonableness is not the standard to apply to determine if compensation is due pursuant to Wis. Stat. § 32.09(6)(b).[19]
3. The Cases Hoffer Relies on Axe Eminent Domain Cases, Not Police Power Cases
¶ 38. Hoffer attempts to distinguish Surety Savings and its predecessors, in which we held that abutting property owners could not recover diminution of value damages caused by changes in access to the highway, by arguing that those cases were abrogated by the decisions in National Auto Truckstops, 263 Wis. 2d 649, and Seefeldt v. DOT, 113 Wis. 2d 212, 336 N.W.2d 182 (Ct. App. 1983). We disagree.
¶ 39. Both cases are easily distinguishable. In the present case DOT was exercising the police power pursuant controlled-access highway statute, while in National Auto Truckstops and Seefeldt it was not. In National Auto Truckstops, the highway at issue (Highway 12) had not been designated "controlled-access." Thus, unlike the present case, the change in National *409 Auto Truckstops' access "was not a 'duly authorized exercise of the police power.'" National Auto Truck-stops, 263 Wis. 2d 649, ¶ 16 (emphasis in original). Consequently Wis. Stat. § 32.09(6)(b) applied and a jury determination of reasonableness was required to determine the amount of compensation due, if any.[20] National Auto Truckstops is inapplicable to controlled-access highway cases because no compensation is due under Wis. Stat. § 32.09(6)(b) when DOT exercises the police power pursuant to Wis. Stat. § 84.25. In fact, the plaintiffs in National Auto Truckstops had conceded that if DOT had designated the highway "controlled-access" under Wis. Stat. § 84.25, no compensation would be due for the elimination of their direct access to Highway 12. See id., ¶ 8. Given that DOT did act pursuant to the controlled-access highway statute vis-á-vis Hoffer's property, National Auto Truckstops is unavailing to Hoffer.
¶ 40. Seefeldt is similarly unhelpful to Hoffer. Preliminarily, as a court of appeals case, Seefeldt could not alter the holding of Surety Savings. See Cook v. Cook, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from *410 a previous supreme court case."). More to the point, Hoffer's reliance on Seefeldt is misplaced because, like in National Auto Truckstops, Seefeldt did not implicate the controlled-access highway statute. In Seefeldt, DOT was acting pursuant to the freeway statute, Wis. Stat. § 84.295. Seefeldt, 113 Wis. 2d at 214-15. As noted above, the freeway statute contains language that the controlled-access highway statute does not: when DOT designates a preexisting highway as a freeway pursuant to Wis. Stat. § 84.295, "reasonable provision for public highway traffic service or access to abutting property shall be provided by means of frontage roads ... or the right of access to or crossing of the public highway shall be acquired on behalf of the state." Wis. Stat. § 84.295(5) (emphasis added). This language in § 84.295(5) requires DOT to pay compensation pursuant to Wis. Stat. § 32.09 if it does not provide reasonable access to the freeway. In Seefeldt, DOT had neither built a frontage road nor acquired Seefeldt's access rights. Seefeldt, 113 Wis. 2d at 215-16. Consequently, a jury determination of reasonableness was required to assess how much, if any, compensation was due under Wis. Stat. § 32.09. Id. at 220-21.
¶ 41. Unlike in National Auto Truckstops or Seefeldt, in the present case, DOT exercised the police power pursuant to the controlled-access highway statute to replace Hoffer's direct access with circuitous access. As we have explained previously, Wis. Stat. § 32.09(6)(b) precludes compensation under that subsection for such exercises of the police power. National Auto Truckstops and Seefeldt did not alter the rule that the provision of alternate access precludes compensation pursuant to Wis. Stat. § 32.09(6)(b) in *411 controlled-access highway cases because neither case involved Wis. Stat. § 84.25. Likewise, they do not apply to this case.
C. HOFFER WAS FULLY COMPENSATED FOR ALL DAMAGE CAUSED BY THE TAKING OF THE .72 ACRE
¶ 42. Hoffer has never articulated how the diminution of value caused by the loss of direct access to STH 19 relates to the compensation due for the taking of the .72 acre.[21] Our formulation of Hoffer's argument is as follows: the taking of the .72 acre and *412 the termination of Hoffer's direct access to STH 19 are not two distinct acts, but rather a single "taking." According to Hoffer this single taking resulted in a diminution in value of its property for which it is owed compensation. Thus, (the argument runs), the elimination of its direct access is compensable under Wis. Stat. § 32.09(6)(b) even though Hoffer's direct access points were not on the land taken because some portion of Hoffer's land was taken by eminent domain.
¶ 43. Hoffer mistakenly styles its argument upon eminent domain when in actuality it prosecutes a separate and distinct claim based upon a challenge to DOT's exercise of the police power.[22] Hoffer is not challenging the reasonableness of the $90,000 valuation of the .72 acre of land taken pursuant to eminent domain; rather, it is challenging the kind of remedies available for the state's legitimate exercise of the police power. Hoffer attempts to characterize this argument as a matter of compensation, but it is really a matter of whether it had a property interest in direct access to the highway.
¶ 44. Our decisions in 118th Street and Jantz v. DOT, 63 Wis. 2d 404, 217 N.W.2d 266 (1974) illustrate why Hoffer's argument is unavailing.
¶ 45. In 118th Street,[23] we held that "compensation for a taking cannot include damages for a lost *413 point of access to a highway if the point of access was lost because of an act separate from the taking, such as the highway's relocation." 359 Wis. 2d 30, ¶ 46. There, we cited with approval Jantz, 63 Wis. 2d 404, a case almost directly analogous to Hoffer's case. See 118th Street, 359 Wis. 2d 30, ¶¶ 47-48. In Jantz, a restaurant owner sought compensation for diminution of value of his business after DOT took .38 acre of Jantz's land in order to expand the highway. DOT also relocated his access to the highway. Jantz, 63 Wis. 2d at 407-09. The .38 acre taken was separate from Jantz's highway access point. Id. We held that the diminution of value was properly excluded from the compensation for the partial taking "because those damages were not 'a consequence of the taking of .38 acre of land ....'" 118th Street, 359 Wis. 2d 30, ¶ 48 (quoting Jantz, 63 Wis. 2d at 412).
¶ 46. Here — -just like the property owners in 118th Street and Jantz — Hoffer did not lose its direct access points to the highway because of the taking of the .72 acre of its land; rather, it lost its direct access points due to DOT's decision to restrict access to STH 19 as part of the STH 26 relocation project. Two separate acts occurred: (1) the taking of Hoffer's .72 acre, and (2) the elimination of Hoffer's direct access points to STH 19 pursuant to the police power. None of Hoffer's access points were on the land taken. Hoffer has consistently argued that the diminution of value to the property was caused by the loss of direct access *414 to STH 19, not by the taking of the .72 acre. The diminution of value of Hoffer's property was not a consequence of the taking of the .72 acre, and accordingly those damages should not be included in the compensation for the .72 acre taken.
V. CONCLUSION
¶ 47. First, we hold that Wis. Stat. § 84.25(3) authorizes DOT to change Hoffer's access to STH 19 in whatever way it deems "necessary or desirable." Such changes, including elimination of direct access points, are duly authorized exercises of the police power and are not compensable under Wis. Stat. § 32.09 as long as alternate access is given that does not deprive the abutting owner of all or substantially all beneficial use of the property. Second, we hold that when DOT changes an abutting property owner's access to a controlled-access highway but other access is given or exists, the abutting property owner is precluded from compensation pursuant to Wis. Stat. § 32.09(6)(b) as a matter of law and no jury determination of reasonableness is required. Reasonableness is the wrong standard to apply because the provision of some access preserves an abutting property owner's right of access to a controlled-access highway, and thus no taking compensable under Wis. Stat. § 32.09(6)(b) occurs. Accordingly, Hoffer is precluded from compensation under Wis. Stat. § 32.09(6)(b) because alternate access to the property was provided by the Frohling Lane extension. We therefore affirm the court of appeals.
By the Court. — The decision of the court of appeals is affirmed.
¶ 48. REBECCA G. BRADLEY, J., did not participate.

 Hoffer Props., LLC v. DOT, No. 2012AP2520, unpublished slip op. (Wis. Ct. App. May 1, 2014).

 All subsequent references to the Wisconsin Statutes are to the 2007-08 version unless otherwise indicated.

 When asked in the trial court whether there was any dispute that STH 19 was a controlled-access highway, Hoffer responded "No argument, your Honor. As [the attorney for DOT said], the Department properly caused it to be or declared it to be a controlled-access highway."

 In its brief to this court, Hoffer states:
In accordance with Wis. Stat. § 32.09(6)(b), DOT can deprive or restrict an abutting owner's right of access to a highway 'without compensation under any duly authorized exercise of the police power.[1] The only way that DOT can acquire an abutting owner's access rights under the police power and without the payment of compensation is by declaring the highway in [sic] to be a controlled-access highway under § 84.25.

 Neither the circuit court nor the court of appeals addressed this issue because Hoffer did not raise it before either court.

 Wis. Stat. § 84.25, the controlled-access highway statute, consists of several subsections that outline the powers of DOT to regulate traffic on the highway and the rights of users, abutting landowners, and the general public after that declaration is made. The procedures DOT must follow to make a valid declaration of controlled-access are stated in section 84.25(1):
The legislature declares that the effective control of traffic entering upon or leaving intensively traveled highways is necessary in the interest of public safety, convenience and the general welfare. The department is authorized to designate as controlled-access highways the rural portions of the state trunk system on which, after traffic engineering surveys, investigations and studies, it shall find, determine and declare that the average traffic potential is in excess of 2,000 vehicles per 24r-hour day. Such designation of a portion of any state trunk highway in any county as a controlled-access highway shall not be effected until after a public hearing in the matter has been held in the county courthouse or other convenient public place within the county following notice by publication of a class 3 notice, under ch. 985, in a newspaper published in the county. If the department shall then find that the average traffic potential is as provided by this subsection, and that the designation of the highway as a controlled-access highway is necessary in the interest of public safety, convenience and the general welfare, it shall make its finding, determination and declaration to that effect, specifying the character of the controls to be exercised. Copies of the finding, determination and declaration shall be recorded with the register of deeds, and filed with the county clerk, and published as a class 1 notice, under ch. 985, in the newspaper in which the notice of hearing was published, and the order shall be effective on such publication. Not more than 1,500 miles of highway shall be designated as controlled-access highways under authority of this section.

 Hoffer's brief to this court states that the date of this taking was December 28, 2009; the Deed by Corporation indicates the date as December 29, 2008.

 Payment for the driveway is not at issue because Hoffer conceded at oral argument that DOT had constructed and paid for the new driveway.

 Pursuant to Wis. Stat. § 32.05(2)-(7), DOT must have an appraisal of the property taken prior to condemnation. DOT must then negotiate with the property owner for purchase of *388 the property. If no agreement can be reached, DOT makes a jurisdictional offer to purchase which describes the nature of the project, the property to be taken, the proposed date of occupancy, the amount of compensation offered, the right of the property owner to accept or reject the offer, and an explanation of how to appeal the amount of compensation offered. Wis. Stat. § 32.05(3). If the property owner rejects the offer, the amount of compensation offered can be appealed to a judge of the circuit court for the county in which the property is located. See Wis. Stat. § 32.05(9)(a).

 Wis. Stat. § 32.09 governs just compensation in eminent domain proceedings. Subsection (6) governs partial takings. Subsection (6)(b) allows for compensation for diminution of value to the rest of the property caused by "deprivation or restriction of [an] existing right of access to [a] highway from abutting land, provided that nothing herein shall operate to restrict the power of the state ... to deprive or restrict such access without compensation under any duly authorized exercise of the police power."

 See n.3.

 The statute cannot authorize unconstitutional deprivations of property without just compensation; thus, in order to exercise the police power to change an abutting owner's access to the highway without paying compensation, DOT must provide some access to the property that is not so circuitous as to deprive the abutting owner of all or substantially all beneficial use of the property. Pursuant to Wis. Stat. § 84.25, DOT may change access in whatever way it deems "necessary or desirable" within these constitutional boundaries.

 As will be discussed below, the other statutes that comprise Wis. Stat. ch. 84, the State Trunk Highways chapter, contain different language regarding compensation to abutting property owners than does the controlled-access highway statute. Consequently, the access rights of abutting property owners are affected differently by the designation of the highway as "controlled-access" than by actions taken by the DOT pursuant to other statutes in the chapter.

 Provided the State trunk highway has not otherwise been designated a freeway pursuant to Wis. Stat. § 84.295 or designated an interstate highway pursuant to Wis. Stat. § 84.29.

 See n.4.

 See n.3.

 Hoffer does not explain how the word "except" is meant to withhold DOT's authority to eliminate access points. Presumably, Hoffer's theory is that by allowing DOT to prohibit anyone from entering the highway "except" at places "designated and provided for such purposes" by the department, the legislature granted DOT authority over the rest of the highway but not over the preexisting access points.

 Wisconsin Stat. § 990.01(2) governs the construction of Wisconsin laws, and it states that "[a]cquire," when used in connection with a grant of power to any person, includes the acquisition by purchase, grant, gift or bequest. It includes the power to condemn in the cases specified in s. 32.02.

 We reiterate, however, that circuitous access amounting to a regulatory taking of the property may be compensable under Wis. Stat. § 32.10.

 We note there is a tension between the language of Wis. Stat. § 32.09(6)(b) stating that in partial takings cases compensation is due for "[d]eprivation or restriction of existing right of access to highway from abutting land [unless restricted by an exercise of the police power]" and our holding in National Auto Truckstops that no compensation is due to an abutting property owner whose existing access has been restricted if reasonable access remains even when DOT has not exercised the police power. Reconciliation of the two is not necessary for the determination of this case and it was neither briefed nor argued, so we will decline to address the matter further.

 At the circuit court, Hoffer stated that "this is a partial taking eminent domain valuation case," mentioned that .72 of an acre was taken, and then argued that Hoffer was being "denied his constitutional right to be paid compensation by DOT for its taking of the subject property's access rights to STH #19." In its motions to that court, Hoffer refers only to "the taking" and never differentiates between the loss of access points and the .72 acre.
At the court of appeals, Hoffer again stated that "this is a partial taking eminent domain valuation case" and characterized the case as relating "to compensation for the taking of access rights." Hoffer stated that "DOT's STH #26 project necessitated a partial taking from the subject property" and claimed that elimination of direct access to STH 19 was one of the "aspects" of the taking. Hoffer argued that "[d]ifferent legal standards apply when there has not been a taking as opposed to when there has been a partial taking.... In the partial taking situation, in accordance with Wisconsin Statutes, section 32.09(6), the owner is entitled to compensation for damages . . . accruing to the owner's remaining property as a result of the taking." (Emphasis added).
In its brief to this court, Hoffer states that "[t]his is a partial taking eminent domain valuation case. .. .The issue in this case relates to compensation for the taking of access rights." Hoffer then states that "DOT's STH #26 project *412 necessitated a partial taking from the subject property" and again characterized the termination of its direct access to STH 19 as an "aspect" of the taking.

 At oral argument, Hoffer stated it was only seeking compensation for loss of direct access to STH 19 and claimed that the difference between a taking under eminent domain and the police power was just "a label."

 The issue in 118th Street was whether diminution of value caused by the relocation of (and the LLCs consequent loss of direct access to) 118th Street should be included in the compensation for the taking of a temporary limited easement under Wis. Stat. § 32.09(6)(g) when the temporary limited easement was used to create additional access to the property.

 Only two justices join Justice Gableman's opinion.

 See, e.g., lead op., ¶¶ 6, 16-17, 20 n.12, 22, 33.

 Lead op., ¶ 6.