¶ 92.
SHIRLEY S. ABRAHAMSON, J.
(concurring). I agree that a public reprimand and full costs should be imposed. I do not, however, join the opinion of three justices of this court. The opinion of the three justices is not a majority opinion. It is, in the terminology of the court, a "lead opinion."
¶ 93. The phrase "lead opinion" is not, as far as I am aware, defined in our Internal Operating Procedures or elsewhere in the case law. Our Internal Operating Procedures (IOP) refer to "lead opinions," but only in stating that if, during the process of circulating and revising opinions, "the opinion originally circulated as the majority opinion does not gar *359 ner the vote of a majority of the court, it shall be referred to in separate writings as the 'lead opinion.'" Wis. S. Ct. IOP II.G.4.[1]
¶ 94. I would describe a lead opinion as one that states (and agrees with) the mandate of a majority of the justices, but represents the reasoning of less than a majority of the participating justices. So, for example, in a case with six justices participating, if three justices join one opinion, two justices join the same mandate only or join a different opinion reaching the same mandate, and one justice dissents, there is a single mandate, but no majority opinion. See Hoffer Props. LLC v. DOT, 2016 WI 5, 366 Wis. 2d 372, 874 N.W.2d 533. Rather, one of the opinions agreeing with the mandate will be designated the lead opinion.
¶ 95. The use of the term "lead opinion" without an agreed-upon definition has the potential to cause confusion among the bench, the bar, and the public. Also, the precedential effect (or lack thereof) of a "lead opinion" is uncertain. Are lead opinions in this court comparable to plurality opinions in the United States Supreme Court?[2] Apparently, the court of appeals considers a plurality decision of this court persuasive but does not always consider it binding. See, e.g., State *360 v. King, 205 Wis. 2d 81, 88-89, 555 N.W.2d 189 (Ct. App. 1996) (citing State v. Dowe, 120 Wis. 2d 192, 194, 352 N.W.2d 660 (1984)).
¶ 96. I write separately to express several concerns.
r — H
1 97. The lead opinion is overly lengthy, and gratuitously addresses too many issues that have not been fully briefed or carefully studied. The issues are difficult and of the utmost importance to attorneys and disciplinary proceedings. The issues need more consideration.
¶ 98. The issues might be better left for future study by a committee this court should create to review the entire Rules of Professional Conduct for Attorneys, as I proposed in Rule Petition 15-01. Instead, the court dismissed the petition. The ruse for dismissal was that the creation of a committee is not a proper subject for a rule petition. For a discussion of the need for a committee, see my dissent to the order dismissing Rule Petitions 15-01, available at https:// www.wicourts.gov/sc/rulhear/DisplayDocument.pdf? content=pdf&seqNo=158416; In re Disciplinary Proceedings Against Templin, 2016 WI 18, ¶¶ 55-60, 367 Wis. 2d 351, 877 N.W.2d 107 (Abrahamson, J., concurring); In the Petition for Reinstatement of Attorney Jeffrey P Neterval, unpublished order, ¶¶ 2—9 (Mar. 22, 2016) (Abrahamson, J., concurring); In the matter of the Reactivation of David W. Klaudt's License to *361 Practice Law in Wisconsin, unpublished order, ¶¶ 3-11 (Mar. 22, 2016) (Abrahamson, J., concurring).
I — I I — I
¶ 99. This is a landmark case in attorney discipline, as Justice Prosser has pronounced. But its landmark status, from my perspective, is the length of time the instant case has lingered in this court. I think it wins the prize for taking longer to decide than any other OLR proceeding I can remember or find. It is a prime example of significant, unnecessary delays in completing a disciplinary matter. Delay appears to exist at every level of the disciplinary proceedings, but the final delay at this court in releasing the lead opinion is outrageous.
¶ 100. The attorney's conduct that is the subject of this proceeding dates back to 2006. The OLR complaint was filed on December 1, 2010. The referee held hearings in February 2012 and issued her report on April 18, 2012.
¶ 101. On October 23, 2012, this court held oral argument in the instant case. More than 10 months elapsed before staff circulated a draft per curiam opinion. Justice David T. Prosser circulated the first draft of his dissent to the court on July 31, 2015, almost three years after oral argument and almost two years after the per curiam was circulated. The first draft of my concurrence was circulated on September 14, 2015, almost two months after the dissent was circulated. The writings have been subject to discussion and revision, and this opinion is being released almost four years after oral argument, almost six years after the complaint was filed, and almost 10 years after the conduct at issue.
*362 ¶ 102. I favor the court's spending the time needed for each matter and giving utmost care to each matter. Opinions and orders in cases, rule matters, and disciplinary proceedings are important to the people directly involved in each case and to the public.
¶ 103. I strongly support the court's longstanding practice of honoring a justice's hold and giving a justice time to study and write separately, but I disfavor the court's inconsistent treatment of requests to hold. Consistency in the court's practice of allowing, disallowing, and limiting holds is important for collegiality and fairness to the litigants and public. For a discussions of the court's failure to follow procedures it adopts, see State v. Finley, No. 2014AP2488-CR, unpublished order (Jan. 11, 2016) (Abrahamson, J., concurring in part and dissenting in part); Wis. Carry, Inc. v. City of Madison, No. 2015AP146, unpublished order (Jan. 11, 2016) (Abrahamson, J., concurring in part and dissenting in part); Regency West Apartments LLC v. City of Racine, No. 2014AP2947, unpublished order (Jan. 11, 2016) (Abrahamson, J., concurring in part and dissenting in part).
¶ 104. Although I favor the practice of permitting holds, I also strongly favor giving litigants and the public prompt decisions. Thus I again urge the court to create uniform time limits for court staff and for justices to study the matter and write. For my repeated requests, see, for example, my concurrences in State ex rel. Nelson v. Wis. Supreme Court, No. 2013AP153-W, unpublished order (Aug. 19, 2015), and Roll v. Department of Justice, No. 2008AP2027, unpublished order (Oct. 14, 2011).
¶ 105. Neither the public, the respondent lawyer, the component parts of the disciplinary proceedings, *363 nor the other lawyers of the state are well served by the long delay in the instant case and in too many other cases.
¶ 106. The court is considering (in closed conference rather than in open conference) appointing a committee to review the procedures of the component parts of the OLR and to make recommendations for change. See Rule Order 15-01, available at https ://ww w. wicourts. gov/sc/ralhear/DisplayDocument.pdf? content=pdf&seqNo=158416 (stating that dismissal of petition does not preclude the court from appointing a committee to study the Office of Lawyer Regulation or the Wisconsin Judicial Code). Although no committee has been formed as of this date, exploring ways to avoid unnecessary delay and accelerate the process of attorney discipline will be an important aspect of any study.
HH I — ! I — I
¶ 107. To foster transparency and fairness, as well as to encourage promptness and uniformity in the court's decisions in discipline cases, I renew my request that the court require the Clerk of the Supreme Court to make available on the court's website information about the dates of the relevant steps in each disciplinary matter, from the filing of the complaint, to its passage through the component parts of the lawyer regulatory proceeding, assignment to a court commissioner, assignment for oral argument or on-brief consideration, and the court's ultimate decision.
¶ 108. The United States Supreme Court has similar helpful information available on its website for litigants and interested persons about the progress of *364 petitions for certiorari in the Supreme Court.[3] See my concurrence in State ex rel. Nelson v. Wis. Supreme Court, No. 2013AP153-W, unpublished order (Aug. 19, 2015).
¶ 109. For the reasons set forth, I do not join the opinion of the three justices and write separately to set forth my concerns.
¶ 110. I am authorized to state that Justice ANN WALSH BRADLEY joins Part I of this opinion.

 Our internal operating procedures are contained in volume 6 of the Wisconsin Statutes.

 See Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds . . . .'") (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)).
For discussions by this court of the precedential effect of plurality opinions in the United States Supreme Court, see, for *360 example, State v. Griep, 2015 WI 40, ¶ 36, 361 Wis. 2d 657, 863 N.W.2d 567; State v. Deadwiller, 2013 WI 75, ¶ 30, 350 Wis. 2d 138, 834 N.W.2d 362.

 I have also suggested that similar information be provided online for petitions for review, petitions for bypass, and original actions filed in this court.