DANIEL KELLY, J. (concurring).
*779 ¶ 62 "There shall be no commercial activity allowed on any of said lots." Sentences become unnecessarily convoluted when they speak in the passive voice through split verb phrases, as this one does. Fortunately, neither of these foibles is, strictly speaking, ungrammatical.[1] And that means the quoted sentence will show us its plain meaning if we just apply a little grammatical elbow-grease."
¶ 63 We start, as would all good grade-school students, with identifying the sentence's subject. Unfortunately, authors make this first step more difficult when they use the passive voice. Such a formulation allows them to hide the actor (the sentence's grammatical subject) by replacing it with what would have been the sentence's grammatical object if they had written the sentence in the active voice. To identify the subject of this sentence, we first must rearrange it into its active-voice form so we can find the grammatical object. Thus rearranged, the restrictive covenant would read: "Lot owners [2 ] shall allow no commercial activity on any of said lots." The verb phrase in this formulation is "shall allow," which makes "commercial activity" the verb's direct object.[3] The passive voice *780 transformation, therefore, moved "commercial activity" to the subject slot.
¶ 64 The passive voice not only swaps the sentence's subject and object, it also transforms the verb phrase ("shall allow") by adding the verb "to be" while simultaneously putting the existing verb into the past tense. Here, the author placed the sentence's subject (commercial activity) in the middle of the verb phrase, which made it read as follows: "shall be no commercial activity allowed." But after setting aside the sentence's subject (commercial activity) for a moment, the verb phrase easily resolves to "shall be allowed."
¶ 65 Now that we have accounted for the subject and verb phrase, we may readily identify the remainder of the sentence as a simple, but critical, prepositional phrase: "on any of said lots." Prepositional phrases come in two varieties-adjectival and adverbial. As the names imply, they provide additional information about either a noun or a verb. Here, the prepositional phrase is adjectival because the preposition provides identifying information about the noun phrase "commercial activity." That is to say, the prepositional phrase tells us the sentence does not apply to all "commercial activity," but only to "commercial activity" as further described by the prepositional phrase. The preposition-"on"-is locational, which tells us the sentence's subject is not allowed only when it occurs where identified by the prepositional phrase.
¶ 66 When we stitch all of this together, the restrictive covenant says that no "commercial activity" (the subject) "shall be allowed" (the verb) "on any of said lots"
*655 (the adjectival prepositional phrase). The covenant does not prohibit all commercial activity, but only so much of it that takes place "on any of said lots." It says nothing about what may be done "with" the *781 property, or "to" the property, but only what may be done "on" the property. That is to say, the covenant's restriction is locational.
*
¶ 67 This grammatical exercise makes the restrictive covenant really quite easy to understand. It also unequivocally prevents the covenant from saying what the Forshees want it to say. The Forshees assert that the Neuschwanders engage in commercial activity when they rent their property (the "Property"), something they believe the restrictive covenant expressly forbids. But they can make the covenant say this only if they ignore either the nature of the activity taking place on the Property, or the prepositional phrase.
¶ 68 Because the restrictive covenant is a location-specific prohibition of commercial activity, our application of its language must begin with surveying what is happening on the Property. As the court's opinion aptly describes, renters "sleep, cook, eat, and recreate in their preferred manner" on the Property. Majority op., ¶ 8. If this is the "renting" about which the Forshees complain, then substituting that activity into the covenant should produce a meaning that is satisfactory to them. Here is how it would read: "There shall be no sleeping, cooking, eating, or recreating commercial activityallowed on any of said lots." If the Forshees stopped a renter in the middle of his meal to ask him what he was doing, he would not say he was renting. He would say he was eating. And if the renter had the temerity to stop the Forshees in the middle of their meal to ask what they were doing, they would not say they were owning. The renters obtained the right to sleep, cook, eat, and recreate on the Property through the rental transaction, but "renting"
*782 does not describe what they do on the Property. We could not read the restrictive covenant this way without disastrous, unintended consequences. If we were to conclude that what the renters do on the Property comprises "commercial activity," then the Neuschwanders' neighbors had best pack their bags because the owners and renters are doing the same thing.
¶ 69 Even though the covenant's restrictions only apply to what occurs "on any of said lots," the Forshees are not actually interested in what happens there. They are quite adamant, in fact, that "[w]hat the customers do while on the property is irrelevant." Instead, they say, it is the Neuschwanders' act of renting the Property that violates the covenant. If that is what the covenant prohibits, plugging that activity into the restrictive covenant should produce the meaning favored by the Forshees. That substitution would have the covenant read, "There shall be no renting of the Property commercial activityallowed on any of said lots." "Renting of the Property," of course, simply refers to the transaction by which one obtains the right to use the Property for a defined period of time, just as purchasing the Property refers to the transaction by which one obtains ownership of the Property.
¶ 70 So if the Forshees are right-that "renting" is a commercial activity to which the covenant refers-then the covenant would merely prohibit the rental transaction from taking place on the Property. That, of course, is not what they want the covenant to say. But it could say that if we ignored the prepositional phrase. The Forshees' desired effect would obtain if we further modified the covenant to say, "There shall be no renting of the Property allowed on any of said lots." But that *656 would make surplusage of the prepositional phrase, which we avoid whenever possible. See *783 Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶ 45, 326 Wis. 2d 300, 786 N.W.2d 15 ("When possible, contract language should be construed to give meaning to every word, 'avoiding constructions which render portions of a contract meaningless, inexplicable or mere surplusage.' " (quoted source omitted) ).
¶ 71 The restrictive covenant's plain meaning simply does not say what the Forshees want it to say. No grammatical reading of the covenant could prevent the Neuschwanders from renting their property-so long as the renters do not engage in "commercial activity" while residing there. The Forshees do not appear to be claiming that activities like sleeping, cooking, eating, and recreating are commercial in nature. Nor could they-if such activity is commercial, the Forshees could no more engage in it than the renters.
¶ 72 After applying a few rules of grammar to the restrictive covenant, the sentence disclosed more than enough of its plain meaning to resolve this case. Instead of employing this grammatical analysis, the court sought a comprehensive definition of "commercial activity." When it was unable to discover one, it declared the phrase ambiguous, and used a rule of construction to resolve the covenant's language against the Forshees. If we should find our covenant construction efforts in extremis, we certainly may have resort to this lifeline. We shouldn't grab for it, however, unless we really are in extremis. We weren't, and we could have (and should have) stated the covenant's meaning without it. Therefore, I respectfully concur and join the majority except to the extent it is inconsistent with this concurrence.
¶ 73 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

I use the term "lead" opinion for two reasons. First, I am concerned that without this cue, the reader may mistakenly believe that the lead opinion has any precedential value. Although six justices join in the mandate of the opinion to affirm the court of appeals (Roggensack, C.J., joined by Abrahamson, J., Ziegler, J., Gableman, J., Rebecca Grassl Bradley, J., and Kelly, J.), it represents the reasoning of only three justices (Roggensack, C.J., joined by Ziegler, J., and Gableman, J.). Justices Abrahamson, Rebecca Grassl Bradley and Kelly joined in the mandate, but they would rely on contrary reasoning.
Although set forth in three separate opinions, four justices disagree with the reasoning of the lead opinion. Contrary to the lead opinion, four justices determine that the restrictive covenant is unambiguous (Abrahamson, J., Ann Walsh Bradley, J., Rebecca Grassl Bradley, J., and Kelly, J.).
Second, I use the term "lead" opinion because although it is undefined in our Internal Operating Procedures, its use here is consistent with past description. We have said "that a lead opinion is one that states (and agrees with) the mandate of a majority of the justices, but represents the reasoning of less than a majority of the participating justices." State v. Lynch, 2016 WI 66, ¶ 143, 371 Wis.2d 1, 885 N.W.2d 89 (Abrahamson & Ann Walsh Bradley, JJ., concurring in part, dissenting in part) (citing Hoffer Props., LLC v. State, Dep't of Transp., 2016 WI 5, 366 Wis. 2d 372, 874 N.W.2d 533 ).

See Bubolz v. Dane Cty., 159 Wis. 2d 284, 295-96, 464 N.W.2d 67 (Ct. App. 1990) (injunction against violation of restrictive covenant did not prohibit a residents from engaging in business activities that are "incidental to their occupation of the premises as their single family residence."); see also Joyce v. Conway, 7 Wis. 2d 247, 251, 96 N.W.2d 530 (1959) (explaining that acquiescence to past violations does not deprive affected property owners of the right to enforce later violations of a restrictive covenant).

See lead op., ¶ 3.